934 So.2d 69 (2006)
J. BARRY and Rita Babin
v.
Bryan Paul McDANIEL.
No. 2005 CU 2455.
Court of Appeal of Louisiana, First Circuit.
March 24, 2006.
Rehearing Denied May 10, 2006.
*70 Keith Friley, Baton Rouge, for PlaintiffsAppellees J. Barry and Rita Babin.
Karen D. Downs, Baton Rouge, for DefendantAppellant Bryan Paul McDaniel.
Before: WHIPPLE, McCLENDON, and WELCH, JJ.
WELCH, J.
In this appeal, Bryan and Christina McDaniel, the biological father and adoptive mother of Madelynne RitaAnne McDaniel, challenge a judgment: (1) declaring La. R.S. 9:344, a non-parental visitation statute, constitutional;[1] (2) granting *71 visitation with Madelynne to Barry and Rita Babin, her maternal biological grandparents; and (3) finding Mr. and Mrs. McDaniel in contempt of court. After a thorough review of the facts and applicable law, we reverse the judgment on the issue of contempt and affirm the judgment in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND
Bryan McDaniel and RitaAnne Babin McDaniel were married and had one child, Madelynne, born on September 28, 2000. RitaAnne was diagnosed with a terminal illness in January 2001 and died on June 22, 2001. On September 12, 2001, Barry and Rita Babin, RitaAnne's parents, filed a petition for visitation, pursuant to La. R.S. 9:344(A), alleging Mr. McDaniel had refused to allow them to visit Madelynne and seeking a judgment allowing them to do so. After a hearing on December 18, 2001, the trial court awarded the Babins visitation on seven prospective Sundays and scheduled a status conference for February 14, 2002. On February 26, 2002, the parties entered into a stipulated judgment providing that Dr. and Mrs. Babin would have visitation with Madelynne from noon on Saturday to 6:00 p.m. on Sunday every three weeks, beginning on March 30, 2002.
On May 17, 2002, Mr. McDaniel filed a motion to terminate the Babins' visitation until they had undergone mental evaluation. Mr. McDaniel alleged the Babins' behavior posed a threat to Madelynne's well being,[2] that Madelynne had not been in a child restraint seat on two occasions when returned from her visit with the Babins, and that Madelynne had returned from a visit with the Babins with an injured toe for which the Babins refused to give an explanation. On May 17, 2002, the trial court signed an order suspending the Babins' visitation, but later, on May 29, 2002, signed another order reinstating it.
On June 20, 2002, the Babins filed a rule for contempt, alleging Mr. McDaniel had denied their visitation with Madelynne on June 8-9, 2002, and had told them he would not allow any visitation until after the hearing on his pending motion.
On July 2, 2002, the parties entered into a stipulated judgment that, inter alia, ordered Dr. and Mrs. Babin to submit to mental/psychological evaluation by Dr. Mary Lou Kelley; reinstituted the Babins' regularly scheduled visitation with Madelynne as of July 6, 2002, to be continued in accordance with the February 26, 2002 stipulated judgment; and reserved decision on the Babins' contempt motion for the trial on the merits.
On June 9, 2003, the Babins filed a second rule for contempt and motion to reset the pending contempt rule previously filed on June 20, 2002. The Babins alleged Mr. McDaniel had denied their visitation or make-up visitations with Madelynne for June 8-9, 2002; for June 29-30, 2002; for December 21-22, 2002; for March 15-16, 2003; for April 5-6, 2003; and for June 7-8, 2003. The trial court scheduled a hearing on the contempt rules for July 15, 2003, but later continued the hearing multiple times. The rules for contempt were ultimately heard at the trial on the merits.
*72 On September 23, 2003, Mr. McDaniel filed a petition for declaratory judgment asking the trial court to find that La. C.C. art. 136 did not apply to the pending case and that La. R.S. 9:344 was unconstitutional.[3] On October 7, 2004, the State of Louisiana, through the Office of the Attorney General, filed a memorandum in opposition to Mr. McDaniel's petition for declaratory judgment contending the trial court did not have subject matter jurisdiction to determine the constitutionality of La. R.S. 9:344, and alternatively, that the statute was constitutional.[4]
Mr. McDaniel married Christina Harbison on November 21, 2003, and she subsequently adopted Madelynne as her daughter by judgment dated July 12, 2004. At the trial, the parties agreed in open court that Mrs. Christina McDaniel was an indispensable party to the suit.
On December 8, 2004, the Babins filed a third rule for contempt contending they had been denied visitation or make-up visitation with Madelynne for August 9-10, 2003; for August 30-31, 2003; for November 22-23, 2003; for May 8-9, 2004; for September 11-12, 2004; for October 23-24, 2005; and for November 13-14, 2004. This contempt rule was also heard at the trial on the merits.
After the trial of this matter on January 13-14 and February 23, 2005, the trial court signed a judgment on June 14, 2005, wherein the court: (1) concluded it had jurisdiction to determine the constitutionality of La. R.S. 9:344;[5] (2) concluded that La. R.S. 9:344 was constitutional; (3) held Mr. and Mrs. McDaniel in contempt of court, ordered them to pay a $1,000.00 fine, plus costs and attorney fees, and granted the Babins seven make-up visitation days with Madelynne; and (4) awarded the Babins visitation with Madelynne on the first weekend of each month from 6:00 p.m. on Friday through 6:00 p.m. on Sunday and one week during the summer. The judgment also contained terms addressing certain details regarding the visitation arrangement.
Mr. and Mrs. McDaniel appeal from the judgment, asserting the following assignments of error:
1. The trial court erred as a matter of law in holding the McDaniels in contempt of court without making specific findings of the contemptuous acts and without stating with specificity the reasons for the finding of contempt of court. Further, the trial court abused its discretion in finding that the McDaniels committed acts constituting contempt of court and punishing them for same as the Babins failed to establish that the McDaniels knowingly and willfully violated the court's order.
2. The trial court erred in failing to declare La. R.S. 9:344 unconstitutional on its face as an impermissible infringement upon the fundamental right of privacy of a parent to raise [his] child in that it violates the Due Process Clause *73 and the Equal Protection Clause of the United States Constitution.
3. The trial court erred in its application of La. R.S. 9:344 to the case sub judice as the manner in which the statute was applied by the trial court constitutes an impermissible infringement upon the fundamental right of privacy of the [McDaniels] to raise their child given the fact that the trial court specifically expressed a bias as a grandparent and the trial court failed to acknowledge or give any special weight or preference to the [McDaniels as] parents of the minor child over those rights afforded to the [Babins].
4. The trial court erred in awarding the amount of visitation set forth in its judgment as the visitation awarded was not "reasonable" as required by statute but rather unduly burdensome on the parents of the minor child.
5. The trial court abused its discretion in determining that the grandparents established by a preponderance of the evidence that the best interests of the child warrant the granting of visitation in favor of the Babins and by the trial court advocating the Babins' position.

CONTEMPT
In their first assignment of error, the McDaniels contend the trial court erred in holding them in contempt of court.
Willful disobedience of any lawful judgment constitutes constructive contempt of court. La. C.C.P. art. 224(2). To find a person guilty of constructive contempt, the trial court must find the person violated the court's order intentionally, purposely, and without justifiable excuse. Leger v. Leger, XXXX-XXXX (La.App. 1st Cir.5/11/01), 808 So.2d 632, 635. If a person is found guilty of contempt, "the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed." La. C.C.P. art. 225(B). Nevertheless, the jurisprudence has held the trial court's failure to recite the facts constituting the basis for the contempt in the actual order will not invalidate a contempt order if the trial court recites such facts in open court. Garrett v. Andrews, XXXX-XXXX (La.App. 1st Cir.9/22/00), 767 So.2d 941, 942; Estate of Graham v. Levy, 93-0636 (La.App. 1st Cir.4/8/94), 636 So.2d 287, 293, writ denied, 94-1202 (La.7/1/94), 639 So.2d 1167. The trial court has great discretion in determining whether a party should be held in contempt for disobeying a court order, and an appellate court should reverse the trial court's decision only when it finds an abuse of that discretion. Leger, 808 So.2d at 635.
The judgment in this case states, "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that BRYAN PAUL AND CHRISTINA McDANIEL are found to be in contempt of court." The judgment does not mention any facts upon which the contempt judgment is based. In written reasons for judgment, the trial court stated the following regarding the contempt judgment:
The Babins filed four contempt rules against Mr. McDaniel, all alleging denial of visitation. As each contempt was filed, the Court and the parties attempted to correct the alleged problem. However, the Court asked that all of the findings of contempt be dealt with at the time of the trial. This was a mistake on the Court's part in that so much time lapsed between the alleged contemptuous behavior and the trial that all parties had faded memories of the exact details which made the testimony unclear as to the specific events of each allegation.

*74 But the Court does believe that without the filing of the contempts[,] the Babins would have been denied a major part of their limited visitation. Therefore, the Court finds the McDaniels in contempt.
These reasons for judgment likewise do not set forth any facts to support the trial court's contempt judgment. In fact, the trial court admitted that it was a "mistake" to defer the contempt rules to the trial and that the lapse of time between the alleged contemptuous behavior and the trial resulted in the parties having "faded memories of the exact details." Further, we have reviewed the trial transcript and have found no specific factual findings by the trial court in open court that would provide a basis for the contempt judgment.
Thus, because the trial court failed to "render an order reciting the facts constituting the contempt," as is required by La. C.C.P. art. 225(B), we reverse the judgment insofar as it held Bryan and Christina McDaniel in contempt of court, ordered them to pay a $1,000.00 fine, plus costs and attorney fees, and granted the Babins seven make-up visitation days with Madelynne.[6]See Garrett, 767 So.2d at 942-943.

FACIAL CONSTITUTIONALITY OF LOUISIANA REVISED STATUTE 9:344
In their second assignment of error, the McDaniels contend the trial court erred in failing to declare La. R.S. 9:344 unconstitutional on its face as an impermissible infringement on parents' fundamental right of privacy to raise their children. The McDaniels argue the statute is unconstitutional because it: (1) fails to set forth particular factors a trial court must consider in exercising its discretion to determine what is in the best interest of the child, and (2) gives the court the authority to determine grandparent visitation rights without affording special weight to the parents' decisions regarding the child's best interest.
Louisiana Revised Statute 9:344(A), the applicable provision here, provides:
If one of the parties to a marriage dies, is interdicted, or incarcerated, and there is a minor child or children of such marriage, the parents of the deceased, interdicted, or incarcerated party without custody of such minor child or children may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.
In support of their argument, the McDaniels refer to Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), wherein the United States Supreme Court struck down a Washington non-parental visitation statute allowing a court to grant visitation to "any person when visitation may serve the best interest of the child." In declaring the "breathtakingly broad" statute unconstitutional, the Troxel court placed particular emphasis upon parents' constitutionally protected fundamental right to make decisions concerning their children, the presumption that parents act in the best interest of their children, and the failure of the Washington statute or court to give some "material" or "special" weight to the parents' own determination on the issue of visitation. Troxel, 530 U.S. at 65-72, 120 S.Ct. *75 at 2060-2063; Wood v. Wood, XXXX-XXXX (La.App. 1st Cir.9/27/02), 835 So.2d 568, 572, writ denied, 2002-2514 (La.3/28/03), 840 So.2d 565.[7]
After Troxel, this court examined the constitutionality of La. R.S. 9:344 in Galjour v. Harris, 2000-2696 (La.App. 1st Cir.3/28/01), 795 So.2d 350, writs denied, XXXX-XXXX, XXXX-XXXX (La.6/1/01), 793 So.2d 1229, 1230, cert. denied, 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 422 (2001). In upholding La. R.S. 9:344, this court concluded the Louisiana statute was more narrowly drawn than the Washington statute at issue in Troxel, because it limited both the non-parental persons who *76 could petition for visitation as well as the circumstances under which visitation could be sought. Galjour, 795 So.2d at 356-358; accord Dupre v. Dupre, XXXX-XXXX (La. App. 3rd Cir.12/30/02), 834 So.2d 1272, 1280 ("We feel, and other circuits have agreed, that [La. R.S.] 9:344 is sufficiently narrowly drafted so as to not violate the fundamental liberty interests of parents.")
In this appeal, the McDaniels do not revisit the issues of to whom and under what circumstances non-parental visitation should be allowed under La. R.S. 9:344. Rather, they contend the statute is constitutionally flawed because it provides no factors by which the trial court is to decide the best interest of the child, and because it gives the trial court authority to make a decision regarding nonparent visitation without affording special weight to the parents' objection to the nonparent visitation.
A statute is unconstitutional on its face if no circumstances exist under which the act would be valid. AFSCME, Council # 17 v. State ex rel. Department of Health & Hospitals, XXXX-XXXX (La.6/29/01), 789 So.2d 1263, 1269. When a court can reasonably construe a statute to preserve its constitutionality, it must do so. Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, XXXX-XXXX (La.10/16/01), 797 So.2d 656, 662. It is a basic rule of statutory interpretation that, if a statute is susceptible of two constructions, one of which will render it constitutional and the other of which will render it unconstitutional, or raise grave and doubtful constitutional questions, the court will adopt the interpretation of the statute which, without doing violence to its language, will maintain its constitutionality. Id.
In Babin v. Babin, XXXX-XXXX (La.App. 1st Cir.7/30/03), 854 So.2d 403, 410-411, writ denied, 2003-2460 (La.9/24/03), 854 So.2d 338, cert. denied sub nom., Babin v. Darce, 540 U.S. 1182, 124 S.Ct. 1421, 158 L.Ed.2d 86 (2004), and in Wood, 835 So.2d at 573, this court noted that a proper interpretation of La. R.S. 9:344 requires the trial court to balance the statute against a fit parent's constitutionally protected fundamental right of privacy in child rearing and to remember that any rights of nonparents are ancillary to that of a fit parent. Further, the nonparent has the burden of proving visitation or a modification of visitation would be "reasonable" and in the "best interest" of the child as is required by the statute. Wood, 835 So.2d at 573, 574; Babin, 854 So.2d at 410. In considering the best interest of the child, the trial court must be aware that as nonparent visitation increases, the infringement and burden on the parent's fundamental right of privacy in child rearing increases proportionally. Wood, 835 So.2d at 573; Babin, 854 So.2d at 410-411. Visitation that unduly burdens parental rights would be unconstitutional, regardless of the provisions of statutory law. Wood, 835 So.2d at 573; Babin, 854 So.2d at 411.
Given these jurisprudentially imposed guidelines, and our duty to construe a statute to preserve its constitutionality, we find La. R.S. 9:344 is constitutional on its face. The dictates of Troxel are met by interpreting La. R.S. 9:344 to require deference to a fit parent's fundamental right of privacy in child rearing and placing the burden on the nonparent to show that the requested visitation is reasonable and in the best interest of the child. Further, the fact that La. R.S. 9:344 does not set forth a list of specific factors to be considered by the trial court in determining the best interest of the child does not render the statute unconstitutional. The courts of this state have applied the "best interest of the child" standard to custody and *77 visitation cases for decades and are very familiar with the factors that must be considered in that determination.[8]See La. C.C. art. 136, Revision Comments1993, comment (b), referring to Maxwell v. LeBlanc, 434 So.2d 375 (La.1983) (wherein the Louisiana Supreme Court set forth a comprehensive body of rules governing visitation, all of which were jurisprudential in nature, because Louisiana did not have statutory provisions concerning child visitation prior to 1988).
For the above reasons, we conclude La. R.S. 9:344 can be interpreted in a constitutional manner and find no error in the trial court's determination that La. R.S. 9:344 is constitutional on its face. This assignment of error has no merit.

CONSTITUTIONALITY OF LOUISIANA REVISED STATUTE 9:344 AS APPLIED
In assignments of error numbers three, four, and five, the McDaniels contend the trial court unconstitutionally applied La. R.S. 9:344 to award the Babins visitation with Madelynne; erred by awarding the Babins an unreasonable amount of visitation; and abused its discretion in determining the Babins carried their burden of proving that visitation with Madelynne was in her best interest.
Although a statute is constitutional on its face, this does not preclude a finding that it has been unconstitutionally applied. A court may apply a facially sufficient statute in an unconstitutional manner. See Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971). The trial court, however, is in the best position to ascertain the best interest of the child given each unique set of circumstances. Babin, 854 So.2d at 408. The trial court has vast discretion in child visitation matters, and its determination on the issue is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. Id.
The McDaniels contend the trial judge unconstitutionally applied La. R.S. 9:344 by specifically expressing her bias as a grandparent and by failing to give special weight or preference to their parental rights over the Babins' rights as grandparents. The McDaniels argue the trial judge specifically expressed such a bias at the initial hearing in this matter when she stated that she was "prejudiced" in this case and that the parties would have to forgive her if her personal feelings were involved, "but there is nobody that can do what grandparents can do for their children."
Generally, a trial judge is presumed to be impartial. State ex rel. J.B. v. J.B., Jr., 35,846 (La.App. 2nd Cir.2/27/02), 811 So.2d 179, 184; see also Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc., XXXX-XXXX, XXXX-XXXX (La.App. 1st Cir.9/28/01), 809 So.2d 1040, 1050. Further, an impersonal prejudice resulting from a judge's background or experience ordinarily is not enough to establish bias. See 48A C.J.S. Judges § 110, p. 738.[9] The trial judge readily admitted her status as a grandmother in this case. However, at the trial, she also noted her status as a mother, former teacher, lawyer, aunt, and cousin, as well as her belief that "family is very important," but reassured counsel for the McDaniels that her beliefs would not *78 overshadow what the law required her to do. When viewed in its entirety, the record does not show the trial judge's status as a grandmother created any particular prejudice as to deprive the McDaniels of their fundamental right of privacy in child rearing. See State ex rel. J.B., 811 So.2d at 184-186.
In support of their argument that the trial court failed to give special weight to their parental rights, the McDaniels point to instances in the record where the trial court questioned them about their parenting beliefs and allegedly "ridiculed" Mr. McDaniel's desire to be a protective parent. They also refer to evidence of instances where the Babins did not respect their wishes as parents during Madelynne's visitations. According to the McDaniels, the Babins have ignored their requests: that Madelynne's hair not be washed during a visitation; to have Madelynne call them during a visitation; to have her sleep in her own bed and in her own room; to refrain from taking Madelynne swimming when she was sick and because she has chronic ear infections; to apply insect repellent to Madelynne; to refrain from taking Madelynne to her birth mother's gravesite; to call the child by her name "Madelynne" and not her former name, "Rita Madelynne;" to refrain from out-of-town travel with Madelynne without permission; to refrain from discussing her birth mother's illness and the particulars of her death with Madelynne; to have Madelynne properly restrained in an approved car seat while traveling in a vehicle; to follow her bedtime and other established routines; and to provide the McDaniels information about Madelynne when she is with them.
In granting visitation to the Babins, it is clear the trial court considered the McDaniels' concerns about the Babins' alleged disregard of their parental wishes. In extensive reasons for judgment and in the judgment, the trial court made specific rulings indicating its deference to the McDaniels' preferences. The judgment gives the McDaniels the option of declining make-up visits if the Babins are unable to exercise their monthly weekend visitation with Madelynne. The judgment allows the McDaniels to defer visitation to the next weekend if the Babins' scheduled weekend falls on certain enumerated holidays. It further requires the Babins to provide the McDaniels with a telephone number where they can be reached during their visitation weekends. The judgment requires the Babins to comply with "any and all reasonable requests for medical treatment" conveyed to them by the McDaniels and mandates that they notify the McDaniels of "any illness or injury suffered by [Madelynne] while she is in their care." With adequate notice, the Babins are required to take Madelynne to any scheduled activity occurring during their visitation (i.e., any sport activities or birthday parties, etc.) and specifies that the McDaniels are free to also attend the activity. Although the judgment allows the Babins to take Madelynne on "short out of town trips" during their visitation periods, the Babins are required to inform the McDaniels of their destination, to remain available for reasonable telephone contact, and to always have Madelynne properly restrained in a car seat when a vehicle is in motion. The Babins "must obey" the McDaniels' wishes that they refrain from talking about the specifics of RitaAnne Babin McDaniel's death, and they are prohibited from taking Madelynne to her birth mother's gravesite until she is old enough. The Babins are required to call the child "Madelynne" and to refer to Christina McDaniel as Madelynne's mother.
The specificity of the trial court's judgment demonstrates its awareness of the McDaniels' constitutionally protected fundamental *79 right to raise Madelynne as they see fit and that the Babins' rights as grandparents are ancillary to the McDaniels' rights.
The McDaniels further challenge the visitation award to the Babins as unreasonable and claim the Babins did not prove that visitation was in Madelynne's best interest. In determining the need for, frequency and length of the Babins' visitation with Madelynne, the trial court was in the best position to ascertain Madelynne's best interest. Babin, 854 So.2d at 408. In making the award, the trial court noted the Babins' experience as parents, grandparents, and contributing members of their community. Although the trial court expressed its firm belief in the authority of parents to raise their child, the court also noted the necessity that a child of a deceased parent have access to her extended family. The court opined that Madelynne's only knowledge of her birth mother's heritage would come from the Babin family. The trial court stated that the Babins had as much a desire to protect Madelynne as did her father and that they always engaged in "appropriate family fun" when Madelynne was with them regardless of the animosity between the adults. She also noted that Dr. Mary Lou Kelley, the psychologist who evaluated Dr. and Mrs. Babin, recommended that Madelynne continue visitation with the Babins.
In this case, as in most visitation cases, the trial court's determination that continued visitation with the Babins was in Madelynne's best interest was heavily based on factual and credibility determinations, which require great deference on appeal. Babin, 854 So.2d at 408. Our review of the record indicates there is a reasonable basis for the trial court's factual findings. Further, as earlier noted, the trial court was also in the best position to ascertain Madelynne's best interest given the circumstances of this case. Based on the evidence indicating the Babins' positive influence in Madelynne's life, and considering that the judgment is specifically drafted to give deference to the McDaniels' role as Madelynne's parents, we cannot say the trial court unconstitutionally applied La. R.S. 9:344 or abused its discretion in awarding visitation to the Babins. These assignments of error are without merit.

CONCLUSION
For reasons stated herein, the trial court's judgment is reversed in part and affirmed in part. It is reversed insofar as it held Bryan and Christina McDaniel in contempt of court, ordered them to pay a $1,000.00 fine, plus costs and attorney fees, and granted the Babins seven make-up visitation days with Madelynne. In all other respects, the judgment is affirmed. Costs of this appeal are equally assessed to the parties.
AFFIRMED IN PART AND REVERSED IN PART.
WHIPPLE, J., concurs and assigns reasons.
WHIPPLE, J., concurring.
Although I agree with the majority, I write separately to express my view that the judgment of the trial court comes perilously close to being an unconstitutional application of grandparents' rights as set forth in LSA-R.S. 9:344. In particular, I am troubled by some of the trial court's comments, which appear to disregard the parents' rights to make decisions for their child in some respects. For instance, in reasons for judgment, the trial court stated that, "[a]lthough the Babins must always give deference to the religious beliefs of the McDaniels, the Court does not see any harm in the child being exposed to the Babins' religious beliefs." Clearly, the religious beliefs to which a parent exposes *80 his or her child and decisions as to how (or even whether) to practice one's religion are fundamental child-rearing decisions that the parents alone have the paramount right to make.
I am also troubled by the court's rejection of certain other parameters that the father would like to set regarding the grandparents' activities with the child. In particular, I am troubled by the court's ruling requiring the parents to send a sick child to the grandparents. In justifying such a ruling, the trial court stated that it found "the Babins perfectly capable of taking care of a sick child," which may be correct with regard to routine childhood illnesses. However, under certain circumstances, i.e., situations involving serious illness, a ruling forcing visitation could amount to unwarranted and unconstitutional interference with paramount parental rights, including the right to make medical decisions and provide such care and comfort as the parents deem appropriate under the circumstances.
Moreover, I am troubled by the Babins' past disregard for some of the decisions, rules and wishes of the child's parents, which resulted in the various orders of the trial court directing the Babins to adhere to the parents' rules or decisions. Because I find that the trial court carefully addressed some of these past problems, I concur in the majority's decision to affirm the grandparents' visitation rights subject to the limitations imposed by the court. However, any future or further attempts by the Babins to knowingly impose their competing beliefs, decisions or wishes upon the child during their visitation periods with the child would, in my view, be difficult to accept as a constitutional limitation upon the parents' paramount rights or as being in the child's best interest.
In sum, the parents' rights regarding their child are paramount, and everything else must be secondary to those rights. Indeed, even in a custody or visitation dispute between two parents, the court is empowered under the "best interest of the child" standard to terminate visitation with one parent where such visitation infringes on or unduly interferes with the primary custodial parent's relationship with the child and, thus, is not in the best interest of the child. Certainly, where the dispute is between a parent and a grandparent, the grandparent's rights must always be secondary to the paramount rights of the parent to raise his or her child under the beliefs, standards and rules he or she chooses.
With regard to decision-making, parents and grandparents are not equals before the court and should never be treated as such. However, given the reasons articulated by the trial court and the record herein, I concur in the majority's decision to affirm the judgment, and to vacate the finding of contempt against the parents.
NOTES
[1] The trial court's judgment states, "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that La. R.S. 9:344 is constitutional." Because the particular provision at issue in this case is La. R.S. 9:344(A), we construe the trial court's judgment as a declaration of the constitutionality only of this specific provision.
[2] This allegation is apparently based, in part, on Mr. McDaniel's discovery that the Babins had taken Madelynne to her birth mother's gravesite and were continuing to call the child "Rita Madelynne" after her name had been legally changed to "Madelynne RitaAnne McDaniel."
[3] In reasons for judgment, the trial court determined La. C.C. art. 136 applied to visitation in divorce cases only and that La. R.S. 9:344 was the correct legal authority for grandparent visitation in this case.
[4] Jurisprudence mandates that the attorney general be served a copy of the pleading challenging a statute's constitutionality. Huber v. Midkiff, XXXX-XXXX (La.2/7/03), 838 So.2d 771, 776.
[5] The trial court determined it had subject matter jurisdiction to determine the constitutionality of La. R.S. 9:344 under La. R.S. 13:1401(A)(1), which grants the family court for the parish of East Baton Rouge exclusive jurisdiction in "[a]ll actions for ... custody and visitation of children, as well as all matters incidental to any of the foregoing proceedings."
[6] Because we reverse on the trial court's failure to recite a factual basis for the contempt judgment, we need not address the McDaniels' argument that the trial court abused its discretion in finding them in contempt because the Babins failed to prove the McDaniels knowingly and willfully violated the court's visitation order.
[7] We note the following state legislative activity after the Troxel decision:

House Concurrent Resolution No. 68 of the 2001 Regular Session provides:
WHEREAS, the United States Supreme Court has ruled in the case of Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), that a Washington state statute, which provided for visitation rights of children, violated certain constitutional rights of parents; and
WHEREAS, Louisiana has several laws regarding the visitation rights of children, including Civil Code Article 136, Children's Code Article 1264, and R.S. 9:344; and
WHEREAS, while the United States Supreme Court rested its decision on the sweeping breadth of the Washington state statute, the court emphasized that one of the oldest of the fundamental interests recognized by the court was the right of parents, whose fitness has not been questioned and who are presumed to act in the best interests of their children, to make decisions concerning the care, custody, and control of their children without the state injecting itself into the private realm of the family.
THEREFORE, BE IT RESOLVED by the Legislature of Louisiana that the Persons Committee of the Louisiana State Law Institute study the effect of the United States Supreme Court case of Troxel v. Granville on Louisiana laws relative to child visitation and to make specific recommendations for revisions to state laws to ensure that state laws are not contrary to the fundamental rights of parents to make decisions concerning the care, custody, and control of their children.
BE IT FURTHER RESOLVED that a copy of this Resolution be transmitted to the director of the Louisiana State Law Institute and that the Louisiana State Law Institute report its findings and recommendations to the legislature on or before January 1, 2003.
House Concurrent Resolution No. 38 of the 2003 Regular Session provides in part:
WHEREAS, the Louisiana State Law Institute submitted its report on the effect of the United States Supreme Court decision in Troxel v. Granville on Louisiana's third-party visitation statutes in response to House Concurrent Resolution No. 68 of the 2001 Regular Session; and
WHEREAS, the report concludes that Louisiana's visitation statutes, Civil Code Article 136(B), R.S. 9:344, and Children's Code Article 1264 are constitutional on their face but may be unconstitutional in application to particular litigation; and
WHEREAS, the report also describes the various visitation statutes as scattered in disparate locations and by virtue of piecemeal amendments insufficiently respectful of a parent's constitutional right to rear his or her own children; and
WHEREAS, the current content of the visitation statutes fail in some cases to make logical distinctions in substantive standards to be applied by the Court on the basis of degree of interference in the family life of parents and children.
THEREFORE, BE IT RESOLVED by the Legislature of Louisiana that the Marriage/Persons Committee of the Louisiana State Law Institute study the aforementioned visitation statutes for the purpose of recommending revisions prior to the 2004 Regular Session.
House Concurrent Resolution No. 139 of the 2004 Regular Session, provided that the Marriage Persons Committee of the Louisiana State Law Institute study Louisiana's child custody and visitation laws and make specific recommendations on or before January 15, 2006, for revisions to state law.
House Concurrent Resolution No. 158 of the 2004 Regular Session, urged and requested the Louisiana State Law Institute to study Louisiana's visitation statutes and make specific recommendations on or before January 15, 2005, for revisions to state laws.
[8] This court has also noted that the factors listed in La. C.C. art. 136(B) may be of some guidance to a trial court in its best interest review under La. R.S. 9:344. See Wood, 835 So.2d at 574 n. 7.
[9] Also see State of Louisiana v. Tyson, 241 F.Supp. 142, 145 (E.D.La.1965) ("Judges are not forbidden to know as judges what they see as men.").