FREDERICKA HOMBERG WICKER, Judge.
| gAppellant-father appeals the trial court’s judgment granting the maternal grandmother visitation with her nine-year old grandson, T.M., pursuant to La. C.C. art. 136(B). For the following reasons, we affirm the trial court judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts in this case are that Darren McGovern and Danelle Keim McGovern were married and had one child, T.M. T.M.’s parents divorced prior to Mrs. McGovern’s death in 2013, and, at some point prior to her death, Mr. McGovern was granted custody of T.M. with Mrs. McGovern granted visitation. On January 23, 2015, Tammy Glover, T.M.’s maternal grandmother, filed a “Petition for Establishment of Grandparents Visitation Rights” in the Twenty-Ninth Judicial District Court for the Parish of St. Charles against the father, seeking visitation with her grandchild.[1]
On March 30, 2015, the trial court considered Mrs. Glover’s petition for visitation. Both Mrs. Glover and Mr. McGovern testified at trial.
*505 1 ¡¡Mrs. Glover testified that; prior!to her daughter’s death, she had a normal grandmother/grandson relationship with T.M. She testified that “without a doubt,” she believes that Mr. McGovern is a good parent but that, since her daughter’s death, she does not have regular, consistent access to her grandson, T.M. She' testified that she sees T.M. approximately one weekend a month but that the visitation' is inconsistent. She testified that Mr. McGovern will sometimes drop T.M. off at her doorstep without notice and indicate that he is going out of town for the weekend. On the other hand, she stated that Mr. McGovern sometimes would call and indicate that she could have visitation with T.M., but then would not bring T.M. to her on the agreed upon date or respond to her subsequent phone calls or text messages.
Mrs. Glover testified that in September of 2013, she planned a birthday party for T.M., with Mr. McGovern’s prior permission, but Mr. McGovern failed to bring T.M. to the party and did not respond to her subsequent phone calls. She further recalled that Mr. McGovern would not allow T.M. to go on a camping trip with her and her side of the family, which had been planned prior to T.M.’s mother’s death.
Mr. McGovern also testified at trial. He testified that T.M. is nine years old and that he has been T.M.’s primary caregiver since birth. He testified that he and Mrs. Glover live a couple of streets from each other and that he typically allows Mrs. Glover to have visitation with T.M. from Friday through Sunday. He testified that T.M. repeatedly jumps up and down, asking to visit Mrs. Glover.’ He admitted that T.M. ánd his grandmother have a loving, stable relationship and that visitation with Mrs, Glover would benefit T.M. He testified that he- has tried to allow visitation once each month, but that he may have intermittently skipped a couple of 14months. He stated that he has made arrangements and not shown up “maybe four” times previously.
Following the hearing, the trial judge granted Mrs. Glover’s request for visitation, finding that visitation was in T.M.’s best interest. On May 19, 2015, the trial judge issued a judgment setting forth an established visitation schedule, stating that, “certainty is something that a child needs in his life.” The judgment granted Mrs. Glover imsupervised visitation on the second weekend of each month from Friday after school through Sunday at 6:00 p.m., as well as Mother’s Day, Christmas Eve, Thanksgiving Eve, and Easter Eve from noon until 6:00 p.m. The trial court also granted Mrs. Glover two consecutive weeks of vacation time with T.M. during the summer, allowed Mrs. Glover reasonable weekly telephone contact with T.M., and ordered that Mrs. Glover be permitted to participate in T.M.’s school activities and extracurricular events.
Mr. McGovern appeals the trial court’s judgment. On appeal, Mr. McGovern contends that because no extraordinary circumstances exist ⅛ this case, the visitation judgment unconstitutionally interferes with his right, as a fit parent, to parent his child. Alternatively, he contends that the visitation granted is excessive; For the following reasons, we find the trial judge did not abuse his discretion in awarding Mrs. Glover visitation and we affirm the trial court judgment.

DISCUSSION

Under the facts of this case, the legal authority for non-parent visitation is found in La. C.C. art. 136, which provides, in pertinent part:[2]
*506 lr,(B) A grandparent may be- granted reasonable visitation rights if the court finds that it is in the best interest of the child. Before making this determination, the court shall hold a contradictory hearing as provided for in R.S. 9:345 in order to determine whether the court should appoint an attorney to represent the child.
[[Image here]]
(D) In determining the best interest of the child under Paragraphs B and C of this Article, the court shall consider:
(1) The length and quality of the prior relationship between the child and the relative.
(2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.
(3) The preference of the child if he is determined to be of sufficient maturity to express a preference. . ,.
(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.
(5) The .mental and physical health of the child and the relative.
On appeal, Mr. McGovern contends that the judgment at issue is in violation of his constitutional right to parent his child, citing Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In Troxel, the United States Supreme Court found unconstitutional as applied in that case a “breathtakingly broad” Washington state visitation statute, which allowed “any person,” to seek visitation at “any time,” if the court determined that visitation “may serve the best interest of the child.” (emphasis added). Troxel, 530 U.S. at 61, 120 S.Ct. 2054. Following Troxel, the Louisiana legislature made extensive efforts to study and determine the effects of the Troxel decision on Louisiana non-parental visitation statutes. See Babin v. McDaniel, 05-2455 (La.App. 1 Cir. 3/24(06), 934 So.2d 69, 75.[3]
*507 | KPrior to its amendment in 2012, La. C.C. art. 136 provided broadly that, “any relative,” upon a showing of “extraordinary circumstances,” could be granted visitation if visitation was in the best interest of the child. Therefore, prior to its. 2012 amendment, La. C.C. art. 136(B) required that grandparents, who were treated the same as any other relative by blood or affinity seeking visitation, were required to first prove that extraordinary circumstances existed and, second, that grandparent visitation would be in the child’s best interest.[4] In 2012, the ^legislature amended article 136(B) to specifically designate grandparents as “statutorily specified persons” per: mitted to seek .reasonable visitation. See Troxel, 530 U.S. at 64, 120 S.Ct. 2054.
In brief to this Court, Mr. McGovern asserts that this Court must determine whether the mother’s death in this case.qualifies as an .extraordinary circumstance under La. C.C. art. 136. However, following the 2012 amendment to La. C.C. art. 136(B), a grandparent — as a statutorily designated person permitted to seek visitation under the article^-is no longer required to prove ■ extraordinary circum *508 stances, but must only show that the visitation sought is reasonable and in the child’s best interest.[5] Trade F. v. Francisco D., 15-224 (La.App. 5 Cir. 9/21/15), 174 So.3d 781, 817.
The trial judge is in the best position to ascertain the best interest of the child, given each unique set of circumstances. Garner v. Thomas, 08-1448 (La.App. 4 Cir. 5/28/09), 13 So.3d 784, 791; see also Babin v. McDaniel, supra. The trial court has vast discretion in child visitation matters, and its determination on the issue is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. Id. The courts of this state have applied the “best interest of the child” standard to custody and visitation cases for decades and are very familiar with the factors that must be considered in that determination. See Babin v. McDaniel, supra. Further, La. C.C. art. 136(D) sets forth specific factors for a trial judge to consider in determining if grandparent visitation is in the child’s best interest.
| sIn this case, the trial judge found that Mr. McGovern admitted that Mrs. Glover and T.M. have a loving, stable relationship, and determined that a consistent visitation schedule is in T.M.’s best interest. The record reflects that the trial judge is the same judge who presided over the initial custody action between Mr. and Mrs. McGovern, wherein Mr. McGovern was granted custody of T.M. At the trial of Mrs. Glover’s request for visitation, the trial judge referenced the prior custody action and is, thus, thoroughly familiar with the facts of this case and the relationship between the parties. The record reflects that T.M. enjoys spending time with Mrs. Glover and would “jump up and down” requesting to see her. The record further supports the finding that Mrs. Glover is a stable and loving part of T.M.’s life. Moreover, the record reflects that the parties were previously amenable to a once-a-month weekend visitation schedule.
Upon our review of the record, we find that the trial court was not manifestly erroneous in its factual finding that the visitation sought was reasonable and that visitation with Mrs. Glover would be in T.M.’s best interest. We therefore conclude that the trial court did not abuse its discretion in awarding Mrs. Glover visitation. Accordingly, the trial court judgment is affirmed.

AFFIRMED

. In accordance with Rule 5-2 of the Uniform Rules-Courts of Appeal, we will refer to the minor child by initials to protect the confidentiality- of the minor involved in this proceeding.

. Louisiana Revised Statutes 9:344(A) is inapplicable to the case at bar because it only applies to grandparent visitation if “one of the parties to the marriage dies, is interdicted, or *506 incarcerated....” Because the minor child’s parents in this case were divorced prior to the mother’s death, La. R.S. 9:344 is inapplicable to this case. See McMillen v. McMillen, 08-502 (La.App. 5 Cir. 3/25/09), 6 So.3d 414, 417; see also Fontenot v. Granger, 07-1588 (La.App. 3 Cir. 6/4/08), 985 So.2d 859, 863.

. The Babin court referenced the following legislative action:
House Concurrent Resolution No. 68 of the 2001 Regular Session provides:
WHEREAS, the United States Supreme Court has ruled in the case of Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), that a Washington state statute, which provided for visitation rights of children, violated certain constitutional rights of parents; and
WHEREAS, Louisiana has several laws regarding the visitation rights of children, including Civil Code Article 136, Children’s Code Article 1264, and R.S. 9:344; and
WHEREAS, while the. United States Supreme Court rested its decision on the sweeping breadth of the Washington state statute, the court emphasized that one of the oldest of the fundamental interests recognized by the court was the right of parents, whose fitness has not been questioned and who are presumed to act in the best interests of their children, to make decisions concerning the care, custody, and control of their children without the state injecting itself into the private realm of the family.
THEREFORE, BE IT RESOLVED by the Legislature of Louisiana that the Persons Committee of the Louisiana State Law Institute study the effect of the United States Supreme Court case of Troxel v. Granville on Louisiana laws relative to child visitation and to make specific recommendations for- revisions to state laws to ensure that state laws are not contrary to the fundamental rights of parents to make decisions concerning the care, custody, and control of their children.
BE IT FURTHER :RESOLVED that a copy of this Resolution be transmitted to the director of the Louisiana State Law Institute and that the .Louisiana State Law Institute report its findings and recommen *507 dations to the legislature on or before January 1, 2003.
House Concurrent Resolution No. 38 of the 2003 Regular Session provides in part:
WHEREAS, the Louisiana State Law Institute submitted its report on the effect of the United States Supreme Court decision in Troxel v. Granville on Louisiana’s third-party visitation statutes in response to House Concurrent Resolution No. 68 of the 2001 Regular Session; and
WHEREAS, the report concludes that Louisiana’s visitation statutes, Civil Code Article 136(B), R.S. 9:344, and Children’s Code Article 1264 are constitutional on their face but may be unconstitutional in application to particular litigation; and
WHEREAS, the report also describes the various visitation statutes as scattered in disparate locations and by virtue of piecemeal amendments insufficiently respectful of a parent’s constitutional right to rear his or her own children; and
WHEREAS, the current content of the visitation statutes fail in some cases to make logical distinctions in substantive standards to be applied by the Court on the basis of degree of interference in the family life of parents and children.
THEREFORE, BE-IT RESOLVED by the Legislature of Louisiana that the Marriage/Persons Committee of the Louisiana State Law Institute study the aforementioned visitation statutes for the purpose of recommending revisions prior to the 2004 Regular Session.
House Concurrent Resolution No. 139 of the 2004 Regular Session, provided that the Marriage Persons Committee of the Louisiana State Law Institute study Louisiana’s child custody and visitation laws and make specific recommendations on or before January 15, 2006, for revisions to state law.
House Concurrent Resolution No. 158 of the 2004 Regular Session, urged and requested the Louisiana State Law Institute to study Louisiana’s visitation statutes and make specific recommendations on or before January 15, 2005, for revisions to state laws:
Babin v. McDaniel, 934 So.2d at 75, ftnte. 7; See also Acts. 2012, No.763, § 1, and 2012 S.B. No. 263.

. Prior to the 2012 amendment, the article, in part, provided:
Under extraordinary circumstances, a relative, by blood or affinity, or a former stepparent or step grandparent, not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. In determining the best interest of the child, the court shall, consider:
(1) The length and quality of the prior relationship between the child and the relative.
(2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.
(3) The preference of the child if he is determined to be of sufficient maturity to express a preference.
(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.
(5) The mental and physical health of the child and the relative. .

. Nevertheless, Louisiana courts have determined that the death of a biological parent is an “extraordinary circumstance” as contemplated under the article. See Fontenot v. Granger, 07-1588 (La.App. 3 Cir. 6/4/08), 985 So.2d 859, 863.