WICKER, J.
Appellant-mother, Olivia Leach, appeals the trial court judgment granting paternal grandparents, Chris and Vanessa Graver, visitation with Olivia's minor child, London. For the following reasons, we affirm the trial court judgment.
FACTUAL AND PROCEDURAL HISTORY
The minor child in this litigation, London, was born on April 16, 2013, to her biological parents, Olivia Leach and Shanon Graver. Olivia and Shanon were never married but lived together in Gulfport, Mississippi for a brief period from March 2012 to September 2013, and separated when London was approximately 5 months old. Thereafter, they returned to Louisiana and shared joint custody of London, with Olivia designated the domiciliary parent by court order in district court case number 755-983 of the 24th Judicial District Court, and with Shanon granted supervised visitation twice weekly. The record reflects that Shanon, a military member, suffered PTSD after he returned home from deployment to Afghanistan, and struggled with substance abuse issues. On September 23, 2016, Shanon and Olivia executed a consent judgment whereby Shanon's visitation was suspended, without prejudice, pending further court proceedings. Shanon *570 died shortly thereafter on January 28, 2017.
On June 22, 2017, Chris and Vanessa Graver-Shanon's parents and London's paternal grandparents-filed suit in the 24th Judicial District Court, seeking court-ordered visitation with London. Olivia filed an answer to the petition, objecting to the Gravers' requested visitation. The court appointed the Loyola Law Clinic to represent the interest of the minor child. At two pretrial hearings, the trial court determined that both statutes governing grandparent visitation, La. R.S. 9:344 and La. C.C. art. 136, applied in this case and, further, that the legal standard of proof the Gravers must meet to support their claim for grandparent visitation is preponderance of the evidence.
The matter proceeded to trial. At trial, Vanessa Graver testified that, prior to Olivia and Shanon's separation, she and her husband Chris would visit Olivia, Shanon, and London in Gulfport Mississippi every other weekend to see London as an infant. She further stated that Olivia and Shanon would return to New Orleans to visit fairly regularly, and that she would visit with them at either her home or Olivia's parents' home when they were in town. After Olivia and Shanon separated, Vanessa saw London less regularly but did spend holidays with her and celebrated London's first and second birthdays with her.[1]
Vanessa testified that she did not feel comfortable visiting with London at Olivia's parents' home during Shanon's visitation because during a November 2015 visitation, Olivia's mother, Marcy Leach, instructed Vanessa that the visitation was between only Shanon and London and instructed Vanessa to wait on the front porch or in her car until the visitation ended.[2] She acknowledged that, for the last 10 minutes of that visit, she was allowed to come off of the porch and into the house to visit with London. She testified that she and her husband did not attempt to seek separate visitation rights while Shanon was alive because they were advised by Shanon's attorney to "step back" and allow Shanon to first work on his visitation and relationship with London.[3] Vanessa testified that, after her son's death, she and her family attempted to contact Olivia to visit with London but generally received no response.
Vanessa testified that she has three other grandchildren: her son, Casey, has two daughters (18 months old and a newborn), who live in Atlanta, and her son, Steven, has a fifteen-month-old son who lives locally. She testified that she loves spending time with her other grandchildren *571 and that they bring her great joy.[4] She testified that she would love for her grandchildren to meet London and for London to meet her cousins. Vanessa further testified that, if visitation were granted, she would respect Olivia's parenting decisions concerning everything for London - her diet, bedtime, etc. Vanessa admitted that Olivia is a fit parent, but testified that she is not a "nice person" because she has withheld London from two loving grandparents and the entire paternal side of London's family.
Olivia testified that London is five years old and attends preschool three days a week. She further testified that the Gravers have not seen London since November of 2015, because they have not attempted to contact her or see her since that time.[5] Olivia stated that, other than one visit in July 2015, she never told the Gravers they were unwelcome during Shanon's visitation.[6] She testified that she objects to any court-ordered visitation because she contends it violates her constitutional right to parent and to determine who visits with her child. Olivia asserts that the Gravers are racist and homophobic, and that Chris Graver has an alcohol abuse issue. She further testified that to her belief the Gravers approve of corporal punishment, which is against her beliefs. Both Olivia and her mother, Marcy, testified that they have never mentioned Shanon, the biological father, to London, nor have they ever discussed the fact that she has paternal grandparents. Olivia objects to the Gravers speaking about Shanon in front of London and requests that, if visitation is granted, the Gravers be introduced to London again as family friends.[7]
Dr. Kristen Luscher, a clinical psychologist, testified that she evaluated Chris and Vanessa Graver to determine if they are fit for grandparent visitation with London. Dr. Luscher met with the Gravers, and also conducted multiple collateral interviews of the Gravers' other family members, friends, and co-workers. Dr. Luscher also conducted personality tests and other psychological testing on both Vanessa and Chris and found no concern for substance or alcohol abuse. She further found no indication, after collateral interviews and other evaluation, that either Chris or Vanessa was racist or homophobic.
Dr. Luscher also conferred with Dr. Karen Van Beyer, the psychologist appointed in the prior custody proceedings *572 between Shanon and Olivia, who indicated her support for the Gravers to have grandparent visitation. Dr. Luscher testified that, since London was of such a young age when she had a relationship with the Gravers and since London has not seen the Gravers in some time, reunification and visitation should be done slowly and with the assistance of a mental health professional.
Following a three day trial, the court took the matter under advisement. On May 11, 2018, the trial judge granted the Gravers' petition for visitation.[8] The trial judge further appointed Dr. Van Beyer to assist London and the Gravers to initiate visitation and ordered that the Gravers may not consume alcohol during visitation with London.[9] This timely appeal follows.
LAW AND ANALYSIS
Olivia appeals the trial court's judgment, contending that the trial court erred in (1) failing to apply the amended version of La. C.C. art. 136[10] ; (2) applying a preponderance of the evidence standard of proof; and (3) awarding grandparent visitation with insufficient evidence to show that it is in London's best interest and over the objection of her only biological parent's wishes.
First, concerning the trial court's application of La. C.C. art. 136, we find that the trial judge correctly applied the version of La. C.C. art. 136 in effect at the time of trial and judgment. La. C.C. art. 136, at the time of trial and judgment, in pertinent part provided:
B. A grandparent may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. Before making this determination, the court shall hold a contradictory hearing as provided for in R.S. 9:345 in order to determine whether the court should appoint an attorney to represent the child.
* * *
D. In determining the best interest of the child under Paragraphs B and C of this Article, the court shall consider:
(1) The length and quality of the prior relationship between the child and the relative.
(2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.
(3) The preference of the child if he is determined to be of sufficient maturity to express a preference.
(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.
(5) The mental and physical health of the child and the relative.
In 2018, the Louisiana legislature amended La. C.C. art. 136, effective August 1, 2018, adding an additional factor for the court's consideration and further instructing that the factors listed are the exclusive factors for the court to consider in determining whether to grant visitation. The amended version of La. C.C. art. 136, effective August 1, 2018, in pertinent part, provides:
*573 B. In addition to the parents referred to in Paragraph A of this Article, the following persons may be granted visitation if the parents of the child are not married or cohabitating with a person in the manner of married persons or if the parents of the child have filed a petition for divorce:
(1) A grandparent if the court finds that it is in the best interest of the child.
* * *
D. In determining the best interest of the child under Subparagraph (B)(1) or (2) of this Article, the court shall consider only the following factors:
(1) A parent's fundamental constitutional right to make decisions concerning the care, custody, and control of their own children and the traditional presumption that a fit parent will act in the best interest of their children.
(2) The length and quality of the prior relationship between the child and the relative.
(3) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.
(4) The preference of the child if he is determined to be of sufficient maturity to express a preference.
(5) The mental and physical health of the child and the relative.
[Emphasis added.]
The 2018 amendment not only added a factor concerning a parent's constitutional right to parent and removed a factor concerning the relative's encouragement of a close relationship with the parent, but also made the list of factors exclusive. Therefore, pursuant to the 2018 amendment, the court may no longer consider the general best interest factors or other considerations in determining a child's best interest in a visitation context. Rather, the trial court may only consider the five factors set forth in the amended version of La. C.C. art. 136.
Pursuant to Louisiana Code of Civil Procedure article 6, "in the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." See Sawicki v. K/S Stavanger Prince , 01-0528 (La. 12/07/01), 802 So.2d 598, 603. We find that the 2018 amendment to La. C.C. art. 136, absent any expression by the legislature to the contrary, applies prospectively only. We note that the 2018 amendment was not in effect at the time of the trial or the May 11, 2018 judgment and, thus, the trial judge could not have applied the amended version in her judgment. We find that the trial judge correctly applied the version of La. C.C. art. 136 in effect at the time of trial and the May 11, 2018 judgment. This assignment of error is without merit.
Second, Olivia challenges the trial court's March 8, 2018 pretrial judgment, in which the court determined that a preponderance of the evidence legal standard of proof would apply to the Gravers' claim for visitation.[11] Rather, Olivia contends that the higher standard of proof, requiring a showing of clear and convincing evidence, should be applied in this case because granting the Gravers' visitation with London infringes on her fundamental constitutional right to parent.[12]
The Louisiana Supreme Court has stated generally that, "[i]n civil cases, a party *574 who has the burden of proof must prove the fact in issue by a preponderance of the evidence, and not by some artificially created greater standard." Talbot v. Talbot , 03-0814 (La. 12/12/03), 864 So.2d 590, 598. The supreme court further stated that, "[o]nly in exceptional controversies is the clear and convincing standard applied in civil cases 'where there is thought to be special danger of deception, or where the court considers that the particular type of claim should be disfavored on policy.' " Id. Olivia contends that granting visitation to London's grandparents interferes with her constitutional right to parent and, thus, a higher standard of proof should apply.
This matter involves paternal grandparents requesting visitation with their granddaughter, following the death of their son, the minor child's biological father. The Gravers do not seek custody of the child. The facts of this case support the trial court's determination that Olivia has denied the Gravers any visitation with London, thereby depriving London of any knowledge of her father's family. Further, the testimony at trial supports the trial judge's conclusion that the Gravers have agreed to respect Olivia's parenting decisions and instructions concerning London's diet, routine, etc. during visitation, and do not seek custody in this case.
In determining which legal standard of proof applies, it is noteworthy that the Civil Code articles concerning other significant family matters, such as termination of parental rights or a change from joint custody to sole custody by only one parent, thereby depriving a biological parent of custody, expressly require a showing of clear and convincing evidence. See La. C.C. art. 132, 187, 192, and 197. However, the article at issue, La. C.C. art. 136, does not instruct that a clear and convincing standard of proof applies. Moreover, the First Circuit Court of Appeal has previously determined that preponderance of the evidence is the appropriate standard of proof in a grandparent visitation case. Babin v. Babin , 02-396 (La. App. 1 Cir. 7/30/03), 854 So.2d 403, 406, writ denied , 03-2460 (La. 9/24/03), 854 So.2d 338, cert denied , 540 U.S. 1182, 124 S.Ct. 1421, 158 L.Ed.2d 86 (2004). Accordingly, we find the trial court correctly applied the preponderance of the evidence standard in this case. This assignment is without merit.
Lastly, Olivia contends that the Gravers failed to prove at trial that visitation is in London's best interest and that the trial court erred in awarding visitation over her objection as the only living biological parent. Under La. C.C. art. 136, a grandparent-as a statutorily designated person permitted to seek visitation under the article-must "only show that the visitation sought is reasonable and in the child's best interest." McGovern v. McGovern , 15-737 (La. App. 5 Cir. 03/30/16), 189 So.3d 503, 507-08. The trial court has vast discretion in child visitation matters, and its determination on the issue is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. Id.
In her thorough written reasons for judgment, the trial judge considered each of the factors set forth in La. C.C. art. 136(B) and determined that visitation with the Gravers would be in London's best interest under the facts of this case. In reaching her determination that visitation is in London's best interest, the trial judge *575 accepted the expert opinion of Dr. Luscher, who conferred with Dr. Van Beyer, and applied all of the testimony and evidence introduced at trial to each of the factors referenced in La. C.C. art. 136.[13] Upon our review of the record in this matter, we cannot say that the trial judge abused her discretion in finding that visitation with the Gravers would be in London's best interest under the facts of this case. Accordingly, we affirm the trial court's judgment. However, although the trial court judgment awards visitation to Vanessa and Chris Graver and appoints Dr. Van Beyer to "oversee the introduction and establishment of a relationship between Plaintiffs and the minor child," the judgment does not set forth a visitation schedule nor does it provide the terms of visitation.[14] Accordingly, we remand this matter to the trial court for a hearing to set a visitation schedule and to set forth the terms of visitation.
AFFIRMED; REMANDED

Photographs were introduced into evidence reflecting the Graver family spending time with London as an infant and toddler.

Vanessa testified that Shanon did not drive during that period of time and that she would drive Shanon to his visitation with London. Vanessa's friend, Susan Guidry, testified that she recalled having a phone conversation with Vanessa wherein Vanessa told her that Marcy Leach instructed her to wait in the car or on the front porch during Shanon's visitation.

Joe Rochelle, Shanon's attorney during the custody proceedings, testified at trial that the Gravers supported Shanon and paid his legal fee for work performed in connection with the custody proceedings. He testified that he told the Gravers that he could not advise them about grandparents' rights. He did, however, testify to his understanding that Olivia and her parents did not allow Vanessa and Chris to visit with London during Shanon's visitation at the Leach's home. He further advised that the family could not afford the $97.00 per week for visitation with a supervised facility.

Vanessa was a competitive swimmer and softball player and would love to share those activities with her grandchildren.

The Gravers introduced into evidence a December 2016 text message to Olivia requesting photos or videos of London since the Gravers "can't visit" with her, as well as an April 2017 text message, wherein Olivia acknowledged that she received a voicemail requesting visitation with London but that she had "concerns" and would get back to them. Vanessa testified that the Gravers never received a response. Rita Graver, Chris Graver's 77-year-old mother and London's paternal great-grandmother, testified that she left a voicemail for Olivia in December 2016 inviting her and London to a holiday party, which they had attended the year prior, and the phone call was never returned.

Olivia's mother testified that the visit occurred in November 2015, where she instructed Vanessa to wait on the front porch during Shanon's visitation time. Vanessa Graver, in her testimony, also recalled the last visit to be November 2015. Olivia maintained that her "visitation log" reflected that the July 2015 visit is the visit during which Vanessa was instructed to wait outside and that, thereafter, Vanessa attended three subsequent visits with Shanon until November 2015.

Olivia read aloud a 36-point list of requests, should visitation be granted, including that the Gravers should not be allowed to take London to church or discuss their religious beliefs with her.

The judgment does not set forth a visitation schedule but indicates [Missing text]

The trial court judgment further ordered that neither party make disparaging comments concerning the other and further that the Gravers support Olivia's parenting decisions.

In her appellant brief, Olivia also asserted that the trial judge erred in applying both La. C.C. art. 136 and La. R.S. 9:344 under the facts of this case. However, the subsequent written Reasons for Judgment issued by the trial court clearly reflects that the trial judge applied only La. C.C. art. 136 in rendering her judgment.

The March 8, 2018 trial court judgment ruled on Olivia's previously filed Motion in Limine: Standard of Proof .

Olivia cites the United States Supreme Court's decision in Troxel v. Granville , 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), to support her position that visitation interferes with her constitutional right to parent. Although in Troxel the Supreme Court emphasized a fit parent's constitutional right to parent, it further recognized that "nonparental visitation statutes are further supported by a recognition, which varies from State to State, that children should have the opportunity to benefit from relationships with statutorily specified persons - for example, their grandparents." Troxel , 120 S.Ct. at 2059.

The trial judge sealed the written reasons for judgment in this matter.

Although the trial court appointed Dr. Van Beyer in this case and indicated that a mental health professional should oversee visitation, it did not specifically order that Dr. Van Beyer supervise the visitation between London and the Gravers and did not specify where the visitation will take place.