WHIPPLE, C.J.
| ¡.This matter is before us on appeal by Everett and Mallory Pastureau, the father and adoptive mother, respectively, of Mr. Pastureau’s two children, from a judgment granting grandparent visitation rights to Lonnie and Janice Rogers, the parents of the children’s deceased mother, Tara Rogers Pastureau. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Everett Pastureau and Tara Rogers Pastureau were married on August 7, 1999. From this marriage two sons were born, namely, L.P. born on September 3, 2002, and J.P., born on November 7, 2005. Tara and Everett Pastureau resided in a home next door to Tara’s parents, Lonnie and Janice Rogers (Mr. and Mrs. Rogers), on False River. Tara Pastureau was diagnosed with cancer around July 13, 2005, while pregnant with J.P. She passed away on June 1, 2006, when L.P. was three years old and J.P. was six months old. During Tara’s battle with cancer, Everett often stayed with Tara in the hospital, while Mr. and Mrs. Rogers often took care of the children.
After Tara’s death, Everett and the boys continued to live next door to their grandparents. As Everett began traveling to Austin, Texas for work, the children often stayed with Mr. and Mrs. Rogers. The children attended the school where Mrs. Rogers was a pre-kindergarten teacher; the children often ate supper at the Rog-erses’ home; and the Rogerses bought the children clothing and took them to doctors’ appointments.
Everett and the boys briefly moved to Austin in the summer of 2009 but Everett and the children moved back to the Baton Rouge area in May of 2010. Everett married Mallory Pastureau on August 7, 2010.[1]
| ^However, at some time in September of 2009, Everett and Mr. Rogers got into a heated argument. Everett and Mr. Rogers later offered conflicting testimony as to what exactly transpired, but both agree that the source of the argument was Everett’s anger at a sign made by Mr. Rogers in memory of his daughter and placed on the driveway to the False River property. When someone kept removing the sign, Mr. Rogers confronted Everett about the sign removal. Although Everett denied actually removing the sign, he admitted at trial that the sign made him angry and bothered him because the sign read “Tara Annette Drive,” and this was the name that Tara used prior to marrying Everett. *521 As such, Everett felt that the sign erected by Mr. Rogers was disrespectful of him, as, in his view, the sign did not acknowledge Tara as his wife.
Sadly, after this confrontation, the Rog-erses were only allowed to see their grandsons on two occasions: once in February 2010 and once in May 2010. Their communication with their grandsons was also severely limited. Mrs. Rogers’s telephone records from mid-March through early November 2010 showed that twenty-eight phone calls to Everett were never answered, nor were the calls ever returned. On April 22, 2010, Mr. Rogers sent an email to Everett, wherein Mr. Rogers expressed his respect for Everett’s role as a parent; his desire and willingness to extend a “sincere” effort to make things work for the sake of the children; and a request that the grandchildren be allowed to attend his son’s wedding, stating that the children’s presence would help ease the pain of not having Tara there. Everett refused to allow the children to attend the wedding, complaining that the email was “concerning” because he did not want his children to carry the burden of filling a void.[2]
|4On May 6, 2010, the Rogerses’ other daughter, Allison (who, notably, was also L.P.’s Godmother), sent an email to Everett requesting that she be allowed to see her nephews. Everett responded, in pertinent part, “[T]hese aren’t your boys, they aren’t your family’s boys, they are meant to be with me and we are simply happier since we have removed the negative influences in our lives.”
After virtually every effort to see their grandchildren was refused (or unacknowledged), on December 20, 2010, the Rogers-es filed a petition for grandparent visitation rights with the Family Court for East Baton Rouge Parish. The petition alleged that Mr. and Mrs. Rogers had been very involved in their grandchildren’s lives up until the early months of 2010, when Everett limited and then terminated their contact with the children. The petition alleged that visitation is in the best interest of the children due to the Rogerses’ prior loving and close relationship with the children and the benefits the children would derive from continuing their close and loving relationship with their grandparents.
Everett responded to the petition with allegations that Lonnie Rogers had become violent towards him in front of his two minor sons and that the Rogerses have shown no interest in perpetuating the way that Everett and his new wife, Mallory, want to raise the children. Everett also alleged that the grandparent visitation statutes are unconstitutional.[3]
After the suit was filed by Mr. and Mrs. Rogers and was pending, Mallory adopted L.P. and J.P., on May 6, 2011, pursuant to a decree rendered by the Juvenile Court of East Baton Rouge Parish.[4] Accordingly, the Rogerses then amended their petition for grandparent visitation rights in the pending suit on |s August 3, 2011, to add Mallory Pastureau as an additional defendant by voluntary joinder.
*522 Prior to the beginning of the full trial on the merits, the trial judge ordered an interim visitation schedule to cover a ten-week period. Due to scheduling conflicts, the trial was continued beyond the ten weeks provided for in the interim visitation schedule. However, in the interim, the parties continued to have disagreements over the visitation schedule. The Rogers-es filed a rule to show cause, seeking to extend the terms of the interim visitation schedule until the trial on the merits. Mr. and Mrs. Rogers also filed a rule for contempt, alleging that despite the court’s interim orders, they had been denied visitation on “week 10” as provided for in the interim visitation schedule.
The trial on the merits began on August 15, 2011 and resumed on November 21, 2011, at which time the trial judge rendered another interim order. This interim order provided that the Rogerses were to have visitation with their grandchildren on November 23, 2011, and this was to include lunch with Everett and Mallory present. The order also provided that the Rogerses were granted the right to visit with the grandchildren on December 27, 28, 29, and 30, 2011, in the Orlando/Celebration, Florida area.[5] As will be discussed more thoroughly below, although Mr. and Mrs. Rogers traveled to Florida with gifts and plans for entertaining the children, these December visits never took place due to the actions and misconduct of the Pastureaus in failing or refusing to facilitate the visitation ordered by the court.
After a bitterly contested trial on the merits, which continued over nine additional days, the trial concluded on June 11, 2012. At trial, extensive testimony and evidence was introduced in support of and in opposition to the limited |nvisitation sought by Mr. and Mrs. Rogers. As the trial court astutely concluded, the sum of the evidence overwhelmingly demonstrates that the Pastureaus acted unreasonably throughout and engaged in an unwarranted and extended course of conduct designed to alienate the children from their grandparents, contrary to the children’s best interest, which was the continuation of the loving relationship that had existed between the children and their grandparents for the majority of their lives.
For example, the record reflects that during two of the “interim” visits, the older grandson became visibly upset and said such things to the Rogerses as, “I cannot get any new toys because of the lawsuit” and “[w]e can’t have fun because then you will tell the judge and my dad will go to jail.”
As the trial court noted, equally troubling are two videos that were introduced by the Pastureaus into the record. In the first video, Mallory is shown arguing with the Rogerses at a school fair; Everett is videotaping; and the children are present. The older grandson is crying in the background and saying, “I don’t want to go with them ... tape it daddy, tape it.” Mallory tells Mr. Rogers that the children do not want to go with him; she can not make them go against their wishes; “I’m not going to jail because of this”; and “[m]y kids remember bad things about you.”
The second video is a tape of events at the Pastureaus’ home in Orlando, Florida made by them using a camera hidden in a teddy bear under the Pastureaus’ Christmas tree. The video camera is pointed at the front door of the home to record the Rogerses coming to pick up the children *523 for the December 27, 28, and 29, 2011 visits, as ordered by the November 21, 2011 interim judgment. In the video, the children come to the door and tell the Rogerses that they do not want to go with them. The Rogerses then plead with their grandsons, saying “it will be fun,” “we have Christmas presents,” and “we are going to the theme park.” After |7the children are allowed by the Pastureaus to refuse to go with their grandparents, Mr. and Mrs. Rogers leave.
Later, when asked at trial why visitation with the grandparents would not be beneficial to the children, Everett responded that he decided to try to build a “whole new family” and he does not want the family to be broken. According to Everett, if he allowed the visits, he would have difficulty “explaining” to E.P. (Mallory’s daughter from a prior relationship, whom Everett has now adopted) why she is not a part of that family, when all along, he has been stating to his “new” family that they are all part of a solid, non-broken family.[6] Specifically, when questioned about why visitation would not be beneficial, Everett testified:
It’s not beneficial at all because it sends a clear message and fortifies the two families and my whole point in the core purpose [sic] and what I’m involved in is my family now ... that we are inclusive.”
At the conclusion of the lengthy trial, the trial court concluded that this clearly was one of the worst cases of alienation the court had ever seen; that the Pastu-reaus were the sole cause of the reluctance of the minor children to go with their grandparents; that Everett’s testimony and explanation were not credible; and that Everett’s memory and recollection was “selective and self-serving.” After finding that the grandparent visitation statutes were constitutional, the trial judge awarded visitation to the Rogerses and found the Pastureaus in contempt of court. Concluding that visitation with their grandparents was in the best interest of the children, the trial court then granted specific visitation in favor of Mr. and Mrs. Rogers, ordering that the Rogerses have visitation with their two grandsons consisting of one weekend every other month, two nights during the school Christmas break, and one week during the school summer break. After obviously considering the turmoil, bickering and conduct of the Pastureaus that had taken | Rplace when the Pastureaus demanded to be included in all family events, which clearly interfered with and undermined the attempts of Mr. and Mrs. Rogers to exercise visitation, the trial court further ordered that Everett and Mallory Pastureau were not to be present for the visitation unless specifically invited by the Rogerses.
The Pastureaus then filed the instant appeal, asserting the following assignments of error:
1. The trial court did not have jurisdiction to render the visitation judgment; rather, the Juvenile Court had jurisdiction as it rendered an adoption decree pertaining to these children;
2. The trial judge erred as a matter of law by awarding visitation under the incorrect statute;
3. The Louisiana grandparent visitation statutes are unconstitutional on their face, and the judgment rendered herein is unconstitutional;
*524 4. The judgment rendered herein was manifestly erroneous as it awarded visitation to the grandparents as they requested over how the parents wanted the visitation to occur;
5. The portion of the judgment finding the Pastureaus in contempt of court was manifestly erroneous.
SUBJECT MATTER JURISDICTION (Assignment of Error No. 1)
Louisiana Revised Statute 13:1401 establishes .and defines the exclusive, but limited, subject matter jurisdiction of the East Baton Rouge Family Court, stating that the Family Court has “exclusive jurisdiction” over “custody and visitation of children.” It is undisputed that the Family Court initially had subject matter jurisdiction over this petition for grandparent visitation rights. However, the Pastu-reaus argue that the Family Court erred in rendering judgment herein, as it | ^subsequently lost jurisdiction when Mallory Pastureau later adopted L.P. and J.P., pursuant to an adoption decree rendered by the Juvenile Court.
In support, the Pastureaus rely on LSA-Ch.C. art. 1265, which provides that a request for limited visitation rights shall be made by motion of the grandparents and filed with the court which rendered the final decree of adoption. Accordingly, the Pastureaus argue, the Family Court erred in exercising jurisdiction as the Juvenile Court has exclusive subject matter jurisdiction over this visitation action since it rendered the final decree of adoption.[7] We disagree.
Louisiana Children’s Code article 1265 states that a motion for grandparent visitation shall be filed with the court which “rendered” the final decree of adoption. When Mr. and Mrs. Rogers filed their petition, no adoption decree had been rendered. Thus, there was no court “which rendered” the final decree of adoption in which to file the motion when the visitation was sought. Accordingly, we find that the clear and unambiguous language of LSA-Ch.C. art. 1265 demonstrates that it does not apply herein to govern the Rogerses’ petition for grandparent visitation, filed prior to the adoption of the children.
Moreover, if there is some ambiguity in the language of LSA-Ch.C. art. 1265, then it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. We do not find that the purpose of LSA-Ch.C. art. 1265 is to divest the Family Court of jurisdiction over a properly filed visitation proceeding that has been before the Family Court for several months, and with which the Family Court is familiar and has rendered interim orders in, simply because an intra-family adoption decree is later rendered by the Juvenile Court. 110Such a result would be contrary to the principles of judicial efficiency and would encourage forum shopping.
For the foregoing reasons, we conclude that LSA-Ch.C. art. 1265 is not dispositive of this petition for grandparent visitation rights. The Family Court lawfully maintained jurisdiction over this matter, despite the subsequent adoption. According *525 ly, we deny the exception of lack of subject matter jurisdiction at the movers’ costs.
DETERMINATION OF APPLICABLE LAW (LSA-R.S. 9:344 or Ch.C. Art 1256) (Assignment of Error No. 2)
There are three legislative enactments addressing grandparent visitation rights in Louisiana. First, LSA-C.C. art. 136 provides, in pertinent part, that “under extraordinary circumstances,” a “relative by blood or affinity” may be awarded reasonable visitation rights if found to be in the best interest of the child.[8] Second, LSA-R.S. 9:344 provides for visitation rights of grandparents “[i]f one of the parties to a marriage dies, is interdicted, or is incarcerated, and there is a minor child or children of such marriage.” Third, LSA-Ch.C. art. 1256 provides that following the rendition of a final adoption decree, “grandparents may obtain limited visitation rights to the adopted child.” (Emphasis added).
The Pastureaus contend that the trial court erred as a matter of law by awarding visitation to the grandparents under LSA-R.S. 9:344 (grandparents can obtain visitation upon death of a party to the marriage) and LSA-C.C. art. 136(B), (relative by blood or affinity may get “reasonable visitation” if in the child’s best interest), rather than under LSA-Ch.C. art. 1256 (after adoption, grandparents can lnobtain “limited visitation”).[9] The Pastureaus further argue that on de novo review, this court should further limit the Rogerses’ visitation because LSA-Ch.C. art. 1256 grants grandparents “only limited” visitation rights. We find no merit to these arguments.
As previously stated, at the time the Rogerses initially filed their petition for visitation, the grandchildren were not adopted by their step-mother. Accordingly, when the petition was filed, the Rogers-es clearly had a right of action to seek visitation under LSA-R.S. 9:344, as they were the parents of a deceased party to a marriage and there were minor children of such marriage.
Further, we do not find that the subsequent adoption of the children negated the rights of the grandparents to pursue court-ordered visitation under LSA-R.S. 9:344. As this Court recently noted in Francis v. Francis, 2011-2116 (LaApp. 1st Cir.6/13/12), 97 So.3d 1091, 1094, writ denied, 2012-1635 (La.7/24/12), 93 So.3d 582, “the clear and unambiguous language of Article 1256 does not foreclose any rights to visitation that grandparents may have pursuant to other authority....”
We further note that LSA-R.S. 9:344 was enacted after LSA-Ch.C. art. 1256.[10] Moreover, in its enactment of LSA-R.S. 9:344, the legislature did not include language therein stating that in the event of a conflict, the provisions of the Children Code article would supersede those of the statute. In comparison, LSA-C.C. art. 136(E) specifically states: “[i]n the event of a conflict between this Article and R.S. 9:344, the provisions of the statute shall supersede those of this Article.”
*526 | i?For these reasons, we conclude that the ruling in the instant matter is not interdicted or governed by LSA-Ch.C. art. 1256. We further clarify that the ruling in the instant matter was properly rendered under LSA-R.S. 9:344, as LSA-C.C. art. 136(E) unequivocally provides that in the event of a conflict, the provisions of LSA-R.S. 9:344 shall supersede those of LSA-C.C. art. 136.[11]
THE TROXEL V. GRANVILLE STANDARDS (Assignment of Error No. 3)
Citing Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the Pastureaus next contend that the trial judge erred by failing to give “material or special” weight to their decision that, as parents, they should be present at all times for their children’s visits with the Rogerses. We find no merit to this argument.
In Troxel, paternal grandparents, after their son’s death, sought visitation with their granddaughters from the girls’ mother, pursuant to a Washington statute. The Washington statute permitted “[a]ny person” to petition for visitation rights “at any time” and authorized the state courts to grant such rights “when visitation may serve the best interest of the child.” The trial court entered a visitation decree ordering visitation with the grandparents one weekend per month, one week during the summer, and four hours on each of the grandparents’ birthdays. Troxel, 530 U.S. at 61, 120 S.Ct. at 2057-2058. The Washington Supreme Court reversed the decision, finding that the Washington statute infringed on the fundamental rights of parents to rear their children. Troxel, 530 U.S. at 63, 120 S.Ct. at 2058. The U.S. Supreme Court then granted certiorari and affirmed, finding that the visitation order in the case was an unconstitutional infringement on the mother’s fundamental right to make decisions concerning the care, custody, and control of |13her two daughters. The U.S. Supreme Court commented that the trial court “failed to accord the determination of Granville [the mother], a fit custodial parent, any material weight.” Troxel, 530 U.S. at 71, 120 S.Ct. at 2063. In addressing the trial court’s failure to give special weight to the mother’s determination of her daughters’ best interests, the U.S. Supreme Court took issue with the trial judge’s comments that “it is normally in the best interest of the children to spend quality time with the grandparent, unless the grandparent, [sic] there are some issues or problems involved wherein the grandparents, their lifestyles are going to impact adversely upon the children.” The U.S. Supreme Court found that by said statement, the trial judge in effect placed on the mother the burden of “disproving” that visitation would be in the best interest of her daughters. Troxel, 530 U.S. at 69,120 S.Ct. at 2062.
Contrary to the Pastureaus’ contention, the trial judge herein did not place the burden on the Pastureaus of “disproving” that visitation with the Rogers would be in the best interest of the children. The trial judge correctly explained in her reasons for judgment that case law has established that the non-parent has the burden of proving that visitation would be *527 reasonable and in the best interest of the children.
Moreover, when the trial judge entered an interim visitation order, Everett was to be present for the first four scheduled visits between the Rogerses and the grandchildren and the visits were to take place at both the Pastureaus’ and the Rog-erses’ homes. The trial judge then entered another interim order, wherein the Pastureaus and the Rogerses were to have lunch together, prior to the Rogerses having visitation alone with their grandchildren.
As these interim orders demonstrate, the trial judge did give material or special weight to the Pastureaus’ expressed desires and concerns about being present for the visits in order to build a single family unit. Nevertheless, the record 1 ^demonstrates that the inclusion of the Pastureaus has not worked in the past, due to the Pastureaus’ own conduct and unjustified action in preventing visitation. Given the record as a whole, and the high level of animosity between the parties, we find no error in the limitations placed by the court on the interaction of the parents and grandparents, as the ruling was clearly based on evidence establishing that such an order was warranted and in the best interest of the children.
FACIAL CONSTITUTIONALITY OF GRANDPARENT VISITATION STATUTES (Assignments of Error Nos. 4 and No. 5)
The Pastureaus next contend that LSA-R.S. 9:344, LSA-C.C. art. 136(B), and LSA-Ch.C. arts. 1256 and 1264 are unconstitutional on their face and unconstitutional as they violate the Equal Protection Clauses of the United States Constitution and Louisiana Constitution. As we have previously determined that the instant matter is governed by LSA-R.S. 9:344, we will only address the constitutionality of this specific statute.[12]
This Court in Barry v. McDaniel, 2005-2455 (La.App. 1st Cir.3/24/06), 934 So.2d 69, 76, thoroughly addressed the constitutionality of LSA-R.S. 9:344 and found the statute constitutional on its face. In reaching its decision, this court emphasized the well-established principle that when a court can reasonably construe a statute to preserve its constitutionality, it must do so. Barry, 934 So.2d at 76, citing, Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 2001-0185 (La.10/16/01), 797 So.2d 656, 662. The opinion then summarized how prior decisions of this Court have interpreted and applied LSA-R.S. 9:344, stating as follows:
1 ifjln Babin v. Babin, 2002-0396 (La.App. 1st Cir.7/30/03), 854 So.2d 403, 410-411, writ denied, 2003-2460 (La.9/24/03), 854 So.2d 338, cert. denied sub nom., Babin v. Darce, 540 U.S. 1182, 124 S.Ct. 1421, 158 L.Ed.2d 86 (2004), and in Wood [v. Wood], 835 So.2d [568] at 573 [ (La.App. 1 Cir.2002) ], this court noted that a proper interpretation of La. R.S. 9:344 requires the trial court to balance the statute against a fit parent’s constitutionally protected fundamental right of privacy in child rearing and to remember that any rights of nonparents are ancillary to that of a fit parent. Further, the nonparent has the burden of proving visitation or a modification of visitation would be “reasonable” and in the “best interest” of the child as is required by the statute. Wood, 835 *528 So.2d at 573, 574; Babin, 854 So.2d at 410. In considering the best interest of the child, the trial court must be aware that as nonparent visitation increases, the infringement and burden on the parent’s fundamental right of privacy in child rearing increases proportionally. Wood, 835 So.2d at 573; Babin, 854 So.2d at 410—411. Visitation that unduly burdens parental rights would be unconstitutional, regardless of the provisions of statutory law. Wood, 835 So.2d at 573; Babin, 854 So.2d at 411.
This court concluded that given the juris-prudentially imposed guidelines, as established in Babin and Wood, and the duty to construe a statute to preserve its constitutionality, LSA-R.S. 9:344 is constitutional on its face. Barry, 934 So.2d at 76.
While recognizing that this Court has addressed the issue and rendered its decision in Barry, the Pastureaus nonetheless contend that the jurisprudential rules are insufficient to render the statute constitutional. Instead, they contend the language of the statute itself must contain language protecting the constitutional rights of the parents.
The Pastureaus’ argument fails to recognize that when a court can reasonably construe a statute to preserve its constitutionality, it must do so. Moreover, the U.S. Supreme Court in Troxel, supra, also recognized that judicial interpretation of a statute may come into play when considering its constitutionality. As set forth in Troxel, in pertinent part:
The Washington Supreme Court had the opportunity to give § 26.10.160(3) a narrower reading, but it declined to do so. See, e.g., [In re Custody of Smith] 137 Wash.2d, [1] at 5, 969 P.2d, [21] at 23 [ (1998) ] (“[The statute] allow[s] any person, at any time, to petition for visitation without regard to relationship to the child, without regard to
changed circumstances, and without | ^regard to harm”); id., at 20, 969 P.2d, at 30 (“[The statute] allow[s] ‘any person’ to petition for forced visitation of a child at ‘any time’ with the only requirement being that the visitation serve the best interest of the child”). Troxel, 530 U.S. at 67,120 S.Ct. at 2061. (Emphasis added).
Accordingly, given the jurisprudentially imposed guidelines, which (1) place the burden of proof on the non-parent and (2) mandate recognition that the rights of a non-parent are ancillary to that of a fit parent, we again find that LSA-R.S. 9:344 is not unconstitutional on its face.
As to the Pastureaus’ alternative ai'gument that LSA-R.S. 9:344 is unconstitutional in that it violates the equal protection clause of the United States Constitution and Louisiana Constitution, we likewise find no merit. The basis of the Pastureaus’ equal protection argument is that the grandparent visitation statutes treat adoptive parents differently from biological parents, despite other provisions of law providing that adoptive parents are given all rights as if the children were born to them. Specifically, the Pastu-reaus contend that adoptive parents are subject to grandparent visitation rights even when against what they believe to be in the best interest of their children, whereas there is no such infringement allowed on a natural parent’s right to raise their children. We find no merit to this argument.
Equal treatment of all claimants in all circumstances is not required. The law merely requires equal application in similar circumstances. Beauclaire v. Greenhouse, 2005-0765, (La.2/22/06), 922 So.2d 501, 505. Applying said principle, we find that LSA-R.S. 9:344 does not treat an adoptive parent any differently from a bio *529 logical parent “in similar circumstances,” where there has been a death of the child’s other parent. A biological parent would also be subject to a claim of grandparent visitation under such circumstances, if shown to be in the best interest of the child.
^CONSTITUTIONALITY OF JUDGMENT RENDERED (Assignments of Error Nos. 6, 7, and 8)
In assignments of error numbers six and eight, the Pastureaus assert that: (1) the judgment violates their fundamental right as parents to make decisions concerning their children and (2) the judgment violates the due process clause. These separate assignments of error are addressed as one herein, as they are interrelated. The crux of both of these arguments is that this particular judgment is unconstitutional as it “unduly burdens” the Pastureaus’ parental rights.[13]
The Pastureaus argue that this judgment is unduly burdensome because: (1) it orders the parents away from their minor children so that the Rogerses can exercise the visitation in the manner and under the conditions which they choose; and (2) the judgment is unduly burdensome as it requires them to travel and bear the expenses of travel in order for the Rogerses to have visitation. We find no merit to these arguments.
The judgment does not give Mr. and Mrs. Rogers the right to exercise grandparent visitation as they choose. Instead, the judgment outlines a very specific visitation schedule, consisting of weekend visits every other month, two days during the holiday break, and one week during the summer, for a total of only twenty-one days per year.
We further find that the trial judge made all reasonable efforts to fairly and appropriately allocate the visitation travel expenses. Clearly, the burden of travel expenses and time is greater for the Rog-erses. The judgment provides that Mr. and Mrs. Rogers are to travel to Florida for the weekend visits in January, March, May, July, September and November. In contrast, the Pastureaus are only required to | ¶«bring the children to Louisiana two times during the year, ie., once during the Christmas break and once over the summer break. Considering the record as a whole, we conclude that the provisions of the judgment are reasonable, as the Pastu-reaus have other relatives in Louisiana whom they routinely travel to Louisiana to visit with. The Pastureaus provided no testimony or evidence regarding their finances or inability to pay travel expenses. When questioned about the logistics of traveling to Louisiana, Mallory only took issue with the possibility of traveling to Louisiana for weekend visits. Again, the judgment does not require the Pastureaus to travel to Louisiana for any weekend visits.
Moreover, we find that the terms of this visitation order are “less burdensome” than the grandparent visitation ordered in prior cases before this court, which we have previously upheld. In Babin v. Babin, 2002-0396 (La.App. 1st Cir.7/30/03), 854 So.2d 403, 411-412, writ denied, 2003-2460 (La.9/24/03), 854 So.2d 338, cert, denied sub nom., Babin v. Darce, 540 U.S. *530 1182, 124 S.Ct. 1421, 158 L.Ed.2d 86 (2004), the grandmother was awarded four hours of visitation every three weeks with her grandchildren. The grandmother and the father were also ordered to attend counseling. This Court affirmed the visitation, finding the trial court was careful to limit the grandparent visitation so as not to be a significant intrusion upon the children’s relationship with their father. In Barry 934 So.2d at 72, 79, this court affirmed the judgment of the trial court, granting the grandparents visitation with their granddaughter on the first weekend of every month from 6:00 p.m. on Friday through 6:00 p.m. on Sunday and one week during summer.
For the foregoing reasons, we conclude the judgment rendered in this matter is amply supported by the record and does not unduly burden the Pastureaus’ parental rights and/or violate their due process rights.
|iaMANIFEST ERROR IN THE JUDGMENT (Assignments of Error Nos. 11 and 12)
The Pastureaus next argue that the judgment was manifestly erroneous. We find no merit to this argument.
The trial court is vested with vast discretion in matters of child custody and visitation. Accordingly, its determination regarding the same is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. As an appellate court, we cannot set aside the trial court’s factual findings unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Babin, 854 So.2d at 408, citing, Stephens v. Stephens, 2002-0402, (La.App. 1st Cir.6/21/02), 822 So.2d 770, 774, and Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
As reflected in the voluminous record generated over the eleven-day trial of this matter, the trial judge heard extensive testimony regarding the close and loving relationship that Mr. and Mrs. Rogers and their extended family members had with their grandsons, prior to Everett terminating their communication and visits with these children. Notably, Everett began to limit the Rogerses interaction with their grandsons only after he got into an argument with Mr. Rogers about an issue that clearly had no relevance to the Rog-erses’ extensively documented loving and nurturing relationship with the children, which had existed for the duration of the children’s lives. The record does not reflect that the Rogerses ever interfered or disregarded, in any manner whatsoever, Everett and Mallory’s rights as parents to make decisions for their children concerning their health, education or religion. At lapmost, there was only one instance discussed wherein Everett claimed the Rog-erses placed their grandsons in a dangerous situation. Specifically, a picture was introduced showing Mrs. Rogers holding a beer while on a “party barge” with her grandsons. Mrs. Rogers acknowledged that she had a beer in her hand in the picture, but further explained that she does not like beer, so she at most only had a few sips with her lunch. Further, while we are cognizant of the dangers of mixing alcohol and boating, especially in the presence of children, we note that when factual findings are based on the credibility of witnesses, the fact finder’s decision to credit a witness’s testimony must be given “great deference” by the appellate court. *531 Babin, 854 So.2d at 408. On review, we find no error in the trial court’s acceptance of Mrs. Rogerses’ testimony regarding this event.[14]
Accordingly, after thoroughly reviewing the testimony in the record and the documentary evidence introduced by the parties, we find no manifest error in the trial court’s ultimate finding that visitation with Mr. and Mrs. Rogers was in the children’s best interest.
CONTEMPT (Assignments of Error Nos. 9 and 10)
The Rogerses filed two rules for contempt in these proceedings, which were both granted by the trial judge at the conclusion of the trial on the merits. On appeal, the Pastureaus contend that the trial judge erred in finding them in contempt. We disagree.
The first rule for contempt was filed by Mr. and Mrs. Rogers on April 21, 2011. This rule alleged that the Pastureaus failed to abide by the provision in the interim visitation order of February 28, 2011, which provided that on “week 10,” the Rogerses would have visitation with the grandchildren on Sunday from 1:00 to 6:00 p.m., unless the parties agreed otherwise. The rule alleged that the time was |2ichanged by agreement of the parties in order to accommodate the children, so that they could attend a birthday party. However, when Mr. and Mrs. Rogers arrived at the Pastureaus’ home to pick up the children, Everett became very upset when he was informed that the children’s aunt (the Rogerses’ daughter) would be part of the visitation. Everett then forced the children to decide between going with the Rogerses or going to a birthday party and Earth Day. The Rogerses eventually left the Pastureaus’ home without exercising visitation.
In response to the rule for contempt, the Pastureaus stated that the Rogerses “had gone outside the judgment and invited other persons to the visitation.” However, we note that there was no provision in the February 28, 2011 judgment prohibiting additional family members, including the Rogerses’ daughter/the children’s aunt, from participating in the visitation with the grandchildren.
The second rule for contempt was filed on February 9, 2012, and pertained to the court-ordered visitation that was scheduled to take place on December 27, 28, 29, and 30, 2011 in the Orlando/Celebration, Florida area, pursuant to the November 21, 2011 interim judgment. In this rule, Mr. and Mrs. Rogers alleged that after they had incurred travel expenses in traveling to Florida and attempted to exercise visitation there, when they arrived at the Pas-tureaus’ home on December 27, 28, and 29, they were met at the door by Everett or Mallory and the children, and were informed that the children did not want to go with them. The rule essentially alleged that Everett and Mallory made no effort to facilitate the court-ordered visitation and refused to encourage the children to go with the Rogerses. The rule further alleged that the Pastureaus willfully acted to prevent Mr. and Mrs. Rogers from being able to enjoy a positive visitation experience with the children.
The Pastureaus’ response to this rule for contempt states that there was no evidence presented by Mr. and Mrs. Rogers which demonstrates that the Pastureaus did not do everything to try to facilitate this visitation. We disagree.
*532 |22As previously mentioned, the Pastu-reaus videotaped the Rogerses arrival at their home on December 27, 28, and 29 to pick up the children, and the videos were introduced into evidence. The videos clearly show that the Pastureaus made no attempts to get the children to go with the Rogerses, they simply called the children to the door and had the children state they did not want to go. Moreover, Mallory admitted at trial that during these exchanges, Everett never instructed the children to go with the Rogerses, rather he said “if you want to go boys, go.”
To find a person guilty of constructive contempt, the court must find that he or she violated the order of the court intentionally, knowingly, and purposely, without justifiable excuse. The trial court is vested with great discretion in determining whether a party should be held in contempt of court and its decision will be reversed only when the appellate court discerns a clear abuse of that great discretion. Haydel v. Pellegrin, 2007-0922 (La.App. 1st Cir.9/14/07), 970 So.2d 629, 632.
On thorough review of the record herein, including the affidavits filed in conjunction with the rules for contempt, the parties’ testimony as to the disputed visitations, and, in particular, the videos made by the Pastureaus themselves depicting the rebuffed efforts of the Rogers-es to exercise the visitation that had been lawfully granted to them, we find the record overwhelmingly supports the trial court’s finding that the Pastureaus acted willfully and in contempt of the court’s orders as alleged in both contempt rules.
CONCLUSION
For the reasons stated herein, the trial court’s judgment is hereby affirmed. The exception of lack of subject matter jurisdiction and motion for stay, filed by the Pastureaus as separate pleadings with this Court, are also hereby denied. All costs of this appeal are assessed to the appellants, Everett and Mallory Pastureau.
JUDGMENT AFFIRMED; EXCEPTION AND MOTION DENIED.
McCLENDON, J., concurs and assigns reasons.

. According to Mallory, they only began dating in July of 2009. She also testified that eventually they began living together with the boys in an apartment in Baton Rouge.

. At trial, Everett set forth that he refused to allow the children to attend even the church ceremonies of his former brother-in-law (and current employee) because he thought the grandparents would be busy partying and would not focus solely on his children.

. As required by LSA-R.S. 13:4448, the Attorney General was served with a copy of the answer in which Everett challenged the constitutionality of the grandparent visitation statutes "on its face and as applied to the facts of this case.”

.Around this same time period, Everett also adopted Mallory’s daughter from a prior relationship.

. During the course of this litigation, the Pas-tureaus relocated to the Orlando/Celebration, Florida area.

. The record also reflects that Mr. and Mrs. Rogers initially were allowed and agreed to take E.P. on visits with their grandchildren and that they honored her and treated her to gifts on holidays like their other grandchildren. For reasons not clear in the record, these visits were also later disallowed.

. While we find no merit to the exception or the arguments urged in support, we note that the fact that the Pastureaus have raised the objection of lack of subject matter jurisdiction for the first time in this appeal is of no moment, as the issue of subject matter jurisdiction can not be waived and can be considered at any time. LSA-C.C.P. art. 925(C).
In addition to raising the issue of subject matter jurisdiction in their brief, the Pastu-reaus also filed a separate pleading entitled "Exception of Lack of Subject Matter Jurisdiction” with this court. Thus, this issue is properly before us.

. Subsequent to the filing of the petition herein, LSA-C.C. art. 136 was amended by Acts 2012, No. 763, § 1, eff. June 12, 2012.

. The trial judge stated the following in her oral reasons for judgment:
Under the provisions of Revised Statute 9:344, I find visitation to the grandparents to be in the best interests of [L.P. and J.P.]. Under the provisions of Civil Code Article 136, ... I find extraordinary circumstances exist to grant reasonable visitation to the grandparents....

.Louisiana Children's Code art. 1256 was enacted by Acts 1991, No. 235, § 12. However, LSA-R.S. 9:344 was enacted by Acts 1993, No. 261, § 5, and amended by Acts 1999, No. 1352, § 1 and Acts 2012, No. 763, § 2.

. Moreover, as set forth in our discussion of the remaining assignments of error, even if we were to find error in the trial court’s reliance on or citation to LSA-R.S. 9:344 and LSA-C.C. art. 136, we would nonetheless affirm. As the record amply demonstrates, the visitation and limitations upon such granted to Mr. and Mrs. Rogers were reasonable and warranted and satisfies the standard of "limited” visitation envisioned by LSA-Ch.C. art. 1256.

. Courts should refrain from reaching or determining the constitutionality of legislation unless, in the context of a particular case, the resolution of the constitutional issue is essential to the decision of the case or controversy. State v. Brown, 2003-2788 (La.7/6/04), 879 So.2d 1276, 1280.

. In assignment of error number 7, the Pas-tureaus argue that this particular judgment is unconstitutional because it violates the equal protection clause. The Pastureaus’ brief does not discuss how this exact judgment violates the equal protection clause. Accordingly, other than our earlier discussion of whether LSA-R.S. 9:344 violates the equal protection clause on its face, we pretermit further discussion on this issue, as the Pastureaus have raised no additional arguments.

. In doing do, we pretermit discussion of the evidence regarding Everett Pastureau’s own actions which purportedly resulted in his arrest in Texas.