# NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CU 1263

TODD ANTHONY FORET, JR.

VERSUS

SARAH GRAVOIS FORET

Judgment Rendered: __JUN 1 6 2021__

* * * * * * *

APPEALED FROM THE THIRTY-SECOND JUDICIAL DISTRICT COURT
IN AND FOR THE PARISH OF TERREBONNE
STATE OF LOUISIANA
DOCKET NUMBER 174792

HONORABLE RANDALL L. BETHANCOURT, JUDGE

* * * * * * *

Jerri G. Smitko
Houma, Louisiana

Attorney for Plaintiff/Appellant
Todd Anthony Foret, Jr.


Danna E. Schwab
Patricia Reeves Floyd
Houma, Louisiana

Intervenors/Appellees
Todd Anthony Foret, Sr. and
Tanya Foret


BEFORE: McDONALD, HOLDRIDGE, and PENZATO, JJ.

Holdridge J. dissents w/ Reasons.

**McDonald, J.**

This is an appeal of a child custody case in which the trial court dismissed the father's rule to terminate the paternal grandparents' visitation, granted a motion for sanctions against him, found him in contempt on three counts, ordered him to pay sanctions, attorney fees, and court costs, and granted additional visitation to the paternal grandparents. After review, we affirm.

## FACTS AND PROCEDURAL HISTORY

Todd Anthony Foret, Jr. (T.J.) and Sarah Gravois Foret (Sarah) were married on October 16, 2010. They had one child, Liam Aaron Foret, born on April 30, 2013. Thereafter, T.J. and Sarah were divorced on April 14, 2016, and they were awarded joint custody of Liam. On April 18, 2016, T.J. married Mikki Adams (Mikki).

On November 9, 2016, T.J. filed a rule for sole custody of Liam. T.J. and Sarah entered into an interim consent judgment giving T.J. temporary sole custody of Liam and dismissing a protective order against Sarah, and the rule to modify custody was continued until such time as pending criminal charges against Sarah were disposed of. Sarah's new husband, Cole Gaspard (Cole), was prohibited from having contact with Liam, and any contact between Sarah's family and Liam was at the sole discretion of T.J.[1]

On April 25, 2017, Sarah filed a motion to reset the rule for custody, maintaining that the criminal charges against both her and her husband had been disposed of and that they had been found not guilty.

On June 8, 2017, T.J. and Sarah entered into a consent judgment providing for joint custody of Liam on a 7/7 basis, agreed to begin immediate counseling

---

[1] The record shows that Sarah and her husband Cole were charged with cruelty to a juvenile. The State had alleged that Sarah and Cole had intentionally or criminally neglected or mistreated Liam. The trial court found the couple were not guilty of the charge and were factually "innocent" of the charge.

2

with Jessica Fanguy to facilitate reunification between Liam and Sarah, with shared 7/7 custody to commence upon the recommendation of Ms. Fanguy. The consent judgment further provided that T.J. pay Sarah $275.00 per month child support, suspended for four months following the date that the parties began 7/7 shared custody, provided that Cole and Mikki would not physically discipline Liam, and other matters.

On September 13, 2017, T.J. filed a motion to modify the consent judgment. T.J. maintained that Sarah had missed appointments with Ms. Fanguy, and that there had been a material change in circumstances with Sarah showing no interest in participating in the ordered visitation or contacting Liam. T.J. asked that he be named the domiciliary parent, that Sarah's visitation be modified to every other weekend only upon the recommendation of the counselor, that his child support obligation be terminated, and that child support be set in accordance with La. R.S. 9:315, *et seq.*

Thereafter, the parties entered into a consent judgment, signed by the trial court on October 25, 2017, giving T.J. sole custody, terminating child support, and giving Sarah visitation at T.J.'s discretion.

On October 27, 2017, T.J.'s parents, Todd Anthony Foret, Sr. and Tanya Foret (the Senior Forets), filed an intervention in the custody proceeding. The Senior Forets averred that Liam had resided with them, and that when Liam was not residing with them, they had very liberal visitation with him. They maintained that T.J. had unilaterally removed Liam from their life when he got angry with them, to the detriment of Liam, and that they had recently seen Liam after not seeing him for several months. The Senior Forets requested liberal visitation with Liam, including every other weekend visitation, 7/7 visitation in the summer, shared holidays, continued contact with Liam, and that they be allowed at all

school events for Liam.

After a hearing, an interim judgment appointed an attorney for Liam, awarded the Senior Forets visitation with Liam, including every other weekend, allowed the Senior Forets and Liam's paternal aunt, Nicole Foret, to attend all school events and have lunch at school with Liam, provided that the Senior Forets notify T.J. if they planned to remove Liam from Terrebonne Parish, provided for the Senior Forets to have Easter afternoon visitation with Liam, and provided that all provisions of previous judgments not in conflict remained in effect. That judgment was signed by the trial court on March 12, 2018.

After a review hearing, the trial court issued a judgment that allowed the intervention and found that it was in the best interest of Liam to have visitation with his grandparents. The trial court ordered that the Senior Forets were to have visitation with Liam every other weekend, with the second weekend being a three-day weekend, that the Senior Forets have one week visitation during the summer, that none of the parties discuss the custody proceedings with or in front of Liam, that all parties encourage and facilitate Liam to have love and respect for the other parties, that T.J. not make his disagreement with the court order obvious to Liam and not attempt to discourage Liam from wanting to see or talk to the Senior Forets, and that none of the parties attempt to, directly or indirectly, by artifice or subterfuge, estrange Liam from the other party or injure or impair the mutual love and affection of Liam. The judgment further provided that the Senior Forets and Nicole were invited to all school events and allowed to have lunch with Liam when allowed by the school, that T.J. shall ensure that all of the parties were authorized to go to the school and attend the functions, and that if the Senior Forets planned to remove Liam from Terrebonne Parish they should notify T.J., and discharged counsel for Liam. The judgment was signed on June 14, 2018. T.J. appealed that

4

judgment. This court amended the trial court judgment to remove the provision allowing visitation with Nicole, and as amended, affirmed the trial court judgment. **Foret v. Foret**, 2018-1192 (La. App. 1 Cir. 12/21/18), 2018 WL 6718602 (unpublished).

On August 28, 2018, the Senior Forets filed a rule for contempt, maintaining that there was evidence of alienation of Liam's affection for the Senior Forets by T.J. and Mikki, that T.J. had refused to allow them Facetime calls with Liam, and that T.J. and Mikki had refused to comply with the court orders. The Senior Forets asked that T.J. be held in contempt of court and ordered to pay all attorney fees and costs incurred in bringing the rule.

After a hearing on October 17, 2018, the trial court continued the hearing on the rule for contempt, ordered T.J. to send written notice to Liam's school that the Senior Forets had permission to attend all functions and events, except appearing for random, non-event lunches, that T.J. allow the Senior Forets to Facetime Liam once a week, and have two additional phone calls per week, that T.J. change Liam's counseling appointments so that they would not conflict with his return from visitation with the Senior Forets, and that the order supplemented and was in addition to any other judgments and orders in effect.

On June 26, 2019, Mikki adopted Liam, and Sarah's parental rights were terminated.

On July 11, 2019, the Senior Forets filed a second rule for contempt, along with a rule to reset the hearing on the first rule for contempt. They asked that T.J. be required to pay attorney fees and costs, and that they be given a 7/7 visitation schedule in the summer and that a holiday visitation schedule be instituted. The Senior Forets maintained that T.J. and Mikki were not complying with the terms of the judgment and that, among other incidents, one day when they did not answer

the door at 6:30 a.m., two hours before T.J.'s time to pick up Liam, Mikki called the police and Liam was forced to walk out to a car with the police standing nearby.

On July 30, 2019, T.J. filed a pro se "NOTICE OF CHANGE IN CIRCUMSTANCE WITH PROPOSED ORDER ATTACHED[.]" This notice sought to terminate the Senior Forets' visitation with Liam, based upon Mikki's adoption of Liam. The trial court found that the pleading was in the nature of a rule to terminate the Senior Forets' visitation, with T.J. averring that the adoption of Liam by Mikki was a change in circumstances warranting the requested termination in visitation. The matter was set for hearing on August 28, 2019.

On August 8, 2019, the Senior Forets filed an opposition to the requested termination of visitation and a motion for sanctions, maintaining that T.J. and Mikki had done everything in their power to alienate Liam from them and that the motion was frivolous. They requested an award of sanctions, including costs and attorney fees.

On August 19, 2019, the Senior Forets filed a third rule for contempt, asserting that they had been denied visitation with Liam, and that T.J. and Mikki had taken the position that Mikki's adoption of Liam had changed the court's judgment. The Senior Forets maintained that they were no longer allowed to pick Liam up from school, and that Mikki had told them she had updated the school records with "a new custody decree." They asked that T.J. be held in contempt and be made to pay attorney fees and costs of the proceeding.

The Senior Forets' three rules for contempt and their motion for sanctions, along with T.J.'s rule for termination of visitation, were all heard on August 28, 2019.

At the conclusion of the hearing, the trial court found that T.J.'s motion to

6

terminate the Senior Forets' visitation was frivolous, that it was not filed in good faith, and dismissed it at T.J.'s cost, granted the Senior Forets' motion for sanctions, and ordered T.J. to pay $1,000 in sanctions pursuant to La. C.C.P. art. 863 to the Senior Forets for filing a frivolous and baseless pleading. T.J. was held in contempt of court on three separate charges. For each charge T.J. was sentenced to 14 days in parish prison, to run consecutively, suspended upon the following conditions: paying to the Senior Forets $6,000 in attorney fees ($2,000 per contempt charge); $677.80 in court costs for the filing of each contempt rule and the opposition to the notice of termination and motion for sanctions and the judgment and upon paying the $1,000.00 in sanctions. T.J. was given until September 30, 2019 at 4:00 p.m. to pay the attorney fees and costs.

Further, the judgment awarded the Senior Forets have visitation with Liam every other weekend, awarded the Senior Forets summer visitation with Liam on a 7/7 basis, alternating weekly until school began, and that the parties adhere to the attached Visitation Implementation Plan with regard to holiday visitation and other issues. Further, the judgment ordered that T.J. ensure that the Senior Forets were invited to all school events, that they be allowed to have lunch with Liam, and that the Senior Forets were authorized to pick Liam up from school or summer camp. All previous judgments not in conflict with the judgment remained in full force and effect. The judgment was signed on September 6, 2019.

T.J. filed a motion for new trial on September 18, 2019. Thereafter, an amended judgment was signed on December 2, 2019, which noted that the Visitation Implementation Plan had been inadvertently omitted from the judgment, by clerical error, and ordered that the parties adhere to the Visitation Implementation Plan, attached as Exhibit A.

The hearing on the motion for new trial was continued and was ultimately

7

heard on July 10, 2020. The trial court denied the motion for new trial on July 24, 2020.

T.J. appealed the judgments signed on September 6, 2019, and December 2, 2019, and the denial of the motion for new trial.

T.J. makes the following assignments of error.

1. The court erred in dismissing [his pro se] inartful rule to terminate [the Senior Forets'] visitation[.]

2. The Court [erred in] awarding the [Senior Forets] additional visitation of 7&7 during the summer and a holiday visitation schedule equaling that awarded to parents with joint legal custody – one half of all major holidays alternated on a yearly basis[.]

3. The court erred in sanctioning [him], finding him in contempt on three separate counts and in imposing onerous and punitive penalties for the transgressions.

4. The trial court erred in signing an amended judgment without notice or hearing.

5. The trial court erred in denying [his] Motion for a New Trial.

## ASSIGNMENT OF ERROR NO. 1

In this assignment of error, T.J. maintains that the trial court erred in dismissing his rule to terminate the Senior Forets' visitation with Liam.

Every child custody case must be viewed within its own peculiar set of facts. **Galjour v. Harris**, 2000-2696 (La. App. 1 Cir. 3/28/01), 795 So.2d 350, 353, writ denied, 2001-1238 (La. 6/1/01), 793 So.2d 1229, and writ denied, 2001-1273 (La. 6/1/01), 793 So.2d 1230, cert. denied, 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 422 (2001). The trial court is vested with great discretion in matters of child visitation, and its determination regarding same is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. **Shaw v. Dupuy**, 2006-0546 (La. App. 1 Cir. 2/9/07), 961 So.2d 5, 6, writ denied, 2007-0505 (La. 3/21/07), 951 So.2d 1092. It is well settled that an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or

8

unless those findings are clearly wrong. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. **Id.**

The trial court found that "this, I don't even know what you want to call it, this Notice of Change in Circumstances and this Proposed Notice of Termination, was filed, in fact, in bad faith. There was no - - first of all, you filed something, and you don't prove it up. You bring absolutely no witnesses, nothing, zero, and so that leaves me to believe, well, I wonder why he filed it if he can't prove it up or even attempt to prove it up, nothing."

In T.J.'s opening statement at the hearing he told the court:

> Your Honor, the first thing I would like to talk about is the fact of when I filed the termination, as I understand it, the procedure would be to follow the current custody decree, and we have a current custody decree right here, it's the final decree of adoption, that states that my wife, that my child would be, she is to be treated as if he was born to her, and the fact of the matter . . . is that this docket is what's current, this docket is what's legal. My ex-wife, Sarah Gaspard, her rights have been terminated, and that falls under this docket, so as I understand it, this docket would no longer pertain to the custody of my child. This is the docket that they intervened on. This is not the current custody decree.

T.J. testified at the hearing in part:

> Q. So what you've just handed me is a Final Decree of Adoption dated June 26th, 2019 signed by Judge Larke?
> A. Yes, ma'am.
> Q. Where on that Final Decree of Adoption does it say anything about custody?
> A. Pretty sure it's implied that we both have shared custody of the child.
> Q. Okay. So the new custody decree . . . . was, in fact, the Final Decree of Adoption?
> A. Yes.

The trial court also noted that T.J. had accused the Senior Forets of "drugging" Liam, but that they had only given him a dose of an over-the-counter medication for a minor malady. This trial court found this behavior "almost

shocking, and it's borderline lying or perjury."

In **Droddy v. Porter**, 2019-0633 (La. App. 1 Cir. 12/27/19), 292 So.3d 925, this court discussed when sanctions are appropriate as follows:

> A trial court's determination regarding the imposition of sanctions is subject to the manifest error or clearly wrong standard of review. **Stroscher v. Stroscher**, 2001-2769 (La. App. 1st Cir. 2/14/03), 845 So.2d 518, 526. Louisiana Code of Civil Procedure article 863 imposes an obligation upon litigants and their counsel who sign a pleading to make an objectively reasonable inquiry into the facts and the law; subjective good faith will not satisfy the duty of reasonable inquiry. **Connelly v. Lee**, 96-1213 (La. App. 1st Cir. 5/9/97), 699 So.2d 411, 414, writ denied, 97-2825 (La. 1/30/98), 709 So.2d 710. However, Article 863 does not empower a trial court to impose sanctions simply because a particular argument or ground for relief is found to be unjustified; the failure to prevail does not trigger an award of sanctions. **Carrollton Presbyterian Church v. Presbytery of S. La. of Presbyterian Church (U.S.A.)**, 2014-1214 (La. App. 1st Cir. 3/9/15), 172 So.3d 1, 8, writ denied, 2015-0682 (La. 5/22/15), 171 So.3d 257.

> To impose sanctions, a trial court must find that one of the affirmative duties imposed by Article 863 has been violated. **Connelly**, 699 So.2d at 414. Louisiana Code of Civil Procedure article 863 provides, in pertinent part:

> B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:

> (1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

> (2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

> (3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> (4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

10

D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.

F. A sanction authorized in Paragraph D shall not be imposed with respect to an original petition which is filed within sixty days of an applicable prescriptive date and then voluntarily dismissed within ninety days after its filing or on the date of a hearing on the pleading, whichever is earlier.

G. If the court imposes a sanction, it shall describe the conduct determined to constitute a violation of the provisions of this Article and explain the basis for the sanction imposed.

In awarding sanctions, the trial court found it frivolous that continuous filings were made by Mr. Droddy. Further, the trial court found that the cases cited by Mr. Droddy's attorney had no application to the pleadings that he had filed or the facts as he alleged in his pleadings and that the filings required needless preparation by the Porters. The trial court stated: "Code of Civil Procedure Article 863 does apply to the facts of this proceeding. Whether or not [Mr. Droddy's attorney] was in good faith or bad faith, his actions were not justified under the facts that he has previously alleged in seeking this visitation."

**Droddy**, 292 So.3d at 928-929.

In this case, the trial court awarded sanctions after it found that T.J.'s rule to terminate the Senior Forets visitation was frivolous, was filed in bad faith, and had no evidentiary support. Further, the trial court found that T.J.'s allegation that the Senior Forets had "drugged" Liam by giving him over-the-counter medication for a minor illness, was shocking, lacked evidentiary support, and bordered on perjury. See La. C.C.P. art. 863B(3).

After a thorough review of the record, we find no abuse of discretion in the trial court's dismissal of T.J.'s motion to terminate the Senior Forets' visitation with Liam and the trial court's order that T.J. pay the Senior Forets $1,000 in

11

sanctions.

## ASSIGNMENT OF ERROR NO. 2

In this assignment of error, T.J. maintains that the trial court erred in awarding the Senior Forets additional visitation of 7/7 during the summer and a holiday visitation schedule of one half of all major holidays alternated on a yearly basis.

T.J. argues that since Mikki adopted Liam and Sarah's parental rights were terminated, Liam's parents (i.e., T.J. and Mikki) are now married, La. C.C. art. 136 no longer applies, and the Senior Forets are no longer entitled to have visitation with Liam. T.J. maintains on appeal that there is no provision under which the Senior Forets could seek visitation under the current facts, thus, it was error for the trial court to award additional visitation when they were essentially "grandfathered" into the visitation they had originally been awarded.

This court previously found that La. C.C. art. 136 applied to this case, stating in pertinent part:

> Article 136 was amended after the filing of the petition in this matter by 2018 La. Acts, No. 383, § 1, effective August 1, 2018, to explicitly state that grandparent visitation may be granted under the article where the parents of the child are not married, are not living in concubinage, or have filed for divorce; but where the parents of the child are married and have not filed for divorce, or where they live in concubinage, the provisions of La. R.S. 9:344 apply to the issue of grandparent visitation. La. C.C. art. 136(B)(1) & (E).
>
> Article 136(B) provides that a court may grant reasonable visitation rights to a grandparent, if the court finds that it is in the best interest of the child. La. C.C. art. 136(B). Additionally, under extraordinary circumstances, any other relative may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. La. C.C. art. 136(C). In determining the best interest of the child for these purposes, the court is to consider the following factors:
>
> 1. The length and quality of the prior relationship between the child and the relative.
> 2. Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.

3. The preference of the child if he is determined to be of sufficient maturity to express a preference.
4. The willingness of the relative to encourage a close relationship between the child and his parent or parents.
5. The mental and physical health of the child and the relative.

La. C.C. art. 136(D)

A grandparent, as a statutorily designated person permitted to seek visitation under Article 136, is not required to prove extraordinary circumstances, but must only show that the visitation sought is reasonable and in the child's best interest. See **McGovern [v. McGovern,** 15-737 at p.7 (La. App. 5 Cir. 3/30/16), 189 So.3d 503, 507-08]. The trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. **Galjour,** 00-2696 at p. 5, 795 So[.]2d at 354. Given the particular circumstances of this case, especially the length and quality of the prior relationship between [the Senior Forets] and Liam, we cannot say that the trial court erred in concluding that visitation with [the Senior Forets] was in Liam's best interest. And considering the significant amount of time that Liam spent with [the Senior Forets] for most of his life prior to the estrangement between T.J. and [the Senior Forets], we cannot say that the visitation awarded is unreasonable.

**Foret v. Foret,** 2018 WL 6718602, at *6 (footnote omitted).

Notably, in **Rogers v. Pastureau,** 2012-2008 (La. App. 1 Cir. 4/26/13), 117 So.3d 517, 525, writ denied, 2013-1833 (La. 8/8/13), 120 So.3d 247, this court found that the subsequent adoption of the children by their stepmother did not negate the rights of the grandparents (parents of the deceased mother) to pursue court-ordered visitation. We find that the same principle applies herein, and that the subsequent adoption of Liam by his stepmother, Mikki, did not negate the rights of the Senior Forets to pursue court-ordered visitation which had commenced when they intervened in the custody proceedings between T.J. and Sarah.

Our review of the record shows that the trial court had Liam's best interest in mind in awarding additional visitation to the Senior Forets. As noted by this court in its prior decision, once T.J. moved in with Mikki, he allowed her to take over Liam's care, despite his awareness of the mental health and other serious health

13

issues. **Foret**, 2018 WL 6718602, at *2.

At the hearing, T.J. testified that he delegated his parental authority to Mikki when he was working, and that he often worked nights at a Sheriff's Office.

Mikki was questioned at the hearing regarding her mental health:

Q. Okay. Are you bipolar?
A. Um, I haven't been diagnosed.
THE COURT:
        Wait. I can't - - say that again?
MS. MIKKI FORET:
        I have not been diagnosed by a professional.
BY [ATTORNEY FOR THE SENIOR FORETS]
        Q. Do you believe you are bipolar?
        A. I believe I have depression.
        Q. Do you take medication?
        A. I do.
        Q. What meds?
        A. Wellbutrin and Singulair.
        Q. Do you take Xanax?
        A. I have it. I take it as needed. I'm prescribed as needed.

Mikki testified that she took the Wellbutrin for depression and that the Singulair was for allergies.

At a previous hearing, on February 27, 2018, Mikki testified that she possibly had bipolar disorder and that she had spoken to a doctor about possibly having bipolar disorder. She also testified at that time that she took Xanax daily, and that she had anxiety and depression. Notably, Mikki testified at that earlier hearing that she had punched T.J. in the mouth during an argument, that she carried a knife after being mugged several times, and that she had been banned from flying for ten years after she "freaked out" on a flight, caused an unscheduled landing, and was kicked off the flight.

In addition to Mikki's mental health issues, she had physical health issues. She had a stroke in the fall of 2016 and was diagnosed with breast cancer in December 2016.

Tanya Foret testified at the hearing regarding the volatility of T.J. and

14

Mikki's relationship:

Q. Now, [T.J.] came to your house this year, in March, to make amends with you guys?

A. Yes, ma'am.

Q. Explain to the Court what happened.

A. He came, he came there crying saying he wanted to make things better, he was so sorry, just - - he looked desperate, desperation, and he told me that he, he told me that he was leaving her, that she was bipolar and he could not deal with it anymore; and he said that he was not going to let her adopt him, that he was stopping this process tomorrow, and he also told me that she, Mikki, wanted an open relationship and he wasn't going for that and that's why they were arguing, and he also –

THE COURT:

Did he use the term "open relationship"?

MS. TANYA FORET:

Yes, sir.

THE COURT:

And did he explain what that meant, or do you know?

MS. TANY FORET:

Um –

THE COURT:

Did he explain what that means?

MS. TANYA FORET:

He said he didn't want to be with anyone else.

THE COURT:

Okay.

BY [ATTORNEY FOR THE SENIOR FORETS]:

A. And he also said that he had talked to someone about his struggles with Mikki and he advised him not to let him adopt, let her adopt Liam.

Q. Did he ask you if Liam could come and stay at your house - -

A. Yes.

Q. - - when he left Mikki.

A. He said that he would be a bum on the streets, that he didn't know what to do, he had nowheres to go, he had lost everything, that he didn't want to lose, he didn't want to lose any more.

Q. Did he tell you that he feared for his life with her?

A. He did.

Q. And what did y'all talk about he should do if that were the case?

A. He said that he was going to go home and get Liam and he was going to come back and talk to [Todd Sr.] because [Todd Sr.] was heading home - - he was fishing - - and he told me, he told me that he would call 911 if he needed, that he did not feel safe with her.

Q. Okay. And then all of a sudden, a couple of days later, they were back together - -

A. Yes.

Q. - - and everything had changed?

A. Yes, ma'am.

15

When T.J. was questioned regarding this conversation, he testified that he "might" have told his parents that Mikki was bipolar. T.J. also testified that he did want to leave Mikki in March 2019, three months prior to allowing Mikki to adopt Liam.

The trial court noted at the end of the hearing, in the present case:

> [T]his is a very sad case, one of the saddest cases of alienation of affection cases I think that has ever been in this courtroom, ever. You know, when you step back and look at it as an independent person not being involved in the minutiae, it's sad. You have a family that is divided and split. I can feel the hatred in this courtroom, which is pretty darn sad when you have, you know, good grandparents, you have people that, a parent that's working, and, ultimately, the bottom line is the child. It's not about the grandparents, not about the natural father or the adoptive mother, it's actually about the child, and that's what I am bound to do is to take into consideration what the Court thinks is best for this child.

We find that the trial court awarded additional visitation time to the Senior Forets due to the long-standing close relationship that they have with Liam and due to the stability that the Senior Forets bring to Liam's life. After review, we find no abuse of discretion by the trial court in awarding additional visitation time to the Senior Forets.

**ASSIGNMENT OF ERROR NO. 3**

In this assignment of error, T.J. maintains that the trial court erred in sanctioning him, finding him in contempt on three separate counts, and in imposing onerous and punitive penalties for the transgressions.

A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. See La. C.C.P. art. 221. Constructive contempt of court includes willful disobedience of any lawful judgment, order, mandate, writ, or process of the court. La. C.C.P. art 224.

16

To find a person guilty of constructive contempt, the court must find that he or she violated the order of the court intentionally, knowingly, and purposely, without justifiable excuse. The trial court is vested with great discretion in determining whether a party should be held in contempt of court and its decision will be reversed only when the appellate court discerns a clear abuse of that great discretion. **Rogers**, 117 So.3d at 532.

In the first rule for contempt filed on August 28, 2018, the Senior Forets maintained that after the March 12, 2018 interim judgment, and the June 14, 2018, judgment, T.J. had refused to allow them FaceTime contact with Liam and had continued to attempt to alienate Liam from them. T.J. admitted at the hearing that he did stop the FaceTime contact between Liam and the Senior Forets in August 2018 "for a time."

In their second rule for contempt filed on July 11, 2019, the Senior Forets maintained that T.J. sent them a text message on July 1, 2019, stating that Mikki would bring Liam to them for their weekend visitation and then pick him up from them (in derogation of the judgment); Tanya Foret went to T.J.'s home to pick Liam up as instructed, and no one was home. The Senior Forets maintained that Liam was then brought to their home, and that on Monday morning, after the Senior Forets did not answer the door at 6:30 a.m., (the exchange time was 8:30 a.m.) Mikki called the police and Liam was forced to walk out the door with the police standing nearby. Further, they maintained that T.J. attempted to thwart their week visitation in the summer and that he informed the school that he did not want the Senior Forets at the school, preventing them from attending the book fair.

At the hearing, T.J. admitted that he decided to change the court-ordered pickup time for the Senior Forets from 3:30 p.m. to 5:00 or 5:30 p.m. because "[i]t was the most feasible option at the time." T.J. blamed a YMCA worker for not

allowing the Senior Forets to pick Liam up at camp, testifying that the YMCA did not want to allow it after he informed them of the court-ordered visitation issue. T.J. testified that the book fair was for parents only, but admitted that the Senior Forets had "possibly" been to the school book fair before.

Further, at the hearing, T.J. testified in part:

> Q. Okay. I'm going to ask you that one more time. Do you think it was a good idea for her to call the police and have Liam be frog marched out of the house in front of, with the police there?
> A. I think that it didn't have to be like that but that that's what they forced us to do.
> Q. Oh, okay. Did you tell them that it was non-negotiable, that they, you were going to pick him up at 6:30 no matter what?
> A. Yes.
> Q. Okay. And that this was how it was going to be no matter what they thought they were allowed to do?
> A. Yes.

In the third rule for contempt, filed on August 19, 2019, the Senior Forets maintained that they were denied their August 17, 2019 weekend visitation with Liam, and further, that they were not allowed to pick Liam up from school after the school was provided with the adoption decree from Mikki. At the hearing, T.J. testified that he had delegated his parental authority to Mikki when he was working, and he confirmed that on August 16, 2019, Mikki told the Senior Forets they would not be getting their weekend visitation, but that she would meet them at Chuck E. Cheese for an hour on Saturday. [2]

When Mikki was asked whether she had told Liam's school that the Senior Forets could not pick him up from school because of a new custody order, Mikki testified that she believed the adoption decree was Liam's "current custody decree[,]" and acknowledged her belief that the adoption decree trumped the custody decree.

The trial court stated that "time after time after time the defendant in rule has

---

[2] T.J. testified that a lot of times Mikki texted the Senior Forets on his behalf because he was working nights, and that sometimes he was sleeping when the texts were sent.

not abided by my orders and for no good reason at all." The trial court further stated that "Mr. Foret and his new wife . . . decided to make up their own rules and do what they want to do because they are 'the mother and the father.'"

The trial court noted that T.J. claimed that there was an abuse allegation against the Senior Forets and that the Department of Family Services told him that he did not have to give Liam to his grandparents for visitation. The trial court found that T.J. presented "no proof, no evidence, no witnesses, nothing, zero, nada. . . . There was no evidence that this was reported, there was no evidence that there was any investigation by DCFS, by law enforcement, by anybody, zero, nada, none."

The punishment which a court may impose upon a person adjudged guilty of contempt of court is provided in La. R.S. 13:4611. See La. C.C.P. art 227. Louisiana Revised Statutes 13:4611(1)(e)(iv) provides that the trial court may punish a person adjudged guilty of a contempt of court by requiring a parent who has violated a visitation order to pay all court costs and reasonable attorney fees of the other party.

The trial court ordered T.J. to pay the Senior Forets attorney fees and court costs after it was shown at the hearing that T.J. admitted changing the court-ordered pickup time and admitted denying the Senior Forets their weekend visitation without justification, and after it was shown that T.J. claimed there was an abuse allegation against the Senior Forets with no evidentiary support. See La. C.C.P. art. 863B(3).

After review, we find no abuse of discretion by the trial court in finding T.J. in contempt of court on three separate counts and ordering him to pay the Senior Forets $6,000 in attorney fees ($2,000 per contempt charge) and a total of $677.80 in court costs for the filing of each contempt rule and the opposition to the notice

of termination and motion for sanctions and the judgment, in accordance with La. C.C.P. art. 863B(3), La. C.C.P. art 227, and La. R.S. 13:4611(1)(e)(iv).

## ASSIGNMENT OF ERROR NO. 4

In this assignment of error, T.J. maintains that the trial court erred in signing an amended judgment without notice or hearing.

The September 6, 2019 judgment states in part "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties are to adhere to the attached [Visitation] Implementation Plan with regard to holiday visitation and other issues[.]" The Visitation Implementation Plan was inadvertently omitted due to a clerical error. The judgment was thereafter amended on December 2, 2019, to attach the Visitation Implementation Plan as Exhibit A.

Louisiana Code of Civil Procedure article 1951 provides, in part, that on motion of the court or any party, a final judgment may be amended at any time to alter the phraseology of the judgment, but not its substance, or to correct errors of calculation. It is well established that Article 1951 contemplates the correction of a "clerical error" in a final judgment, but does not authorize substantive amendments. **Denton v. State Farm Mutual Automobile Insurance Company**, 2008-0483 (La. 12/12/08), 998 So.2d 48, 52.

We find that the inadvertent failure to attach the Visitation Implementation Plan for holiday visitation and other issues to the judgment was a clerical error, and we find that the trial court did not abuse its discretion by signing an amended judgment with the Visitation Implementation Plan attached.

## ASSIGNMENT OF ERROR NO. 5

In this assignment of error T.J. maintains that the trial court erred in denying his motion for new trial.

20

A new trial shall be granted, upon contradictory motion of any party: (1) when the verdict or judgment appears clearly contrary to the law and the evidence; (2) when the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial; or (3) when the jury was bribed or has behaved improperly so that impartial justice has not been done. La. C.C.P. art. 1972. A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. La. C.C.P. art. 1973.

Applying this standard to the case before us, we find no abuse of discretion in the trial court's denial of the motion for new trial.

## CONCLUSION

For the foregoing reasons, the trial court judgment is affirmed. Costs of this appeal are assessed against Todd Anthony Foret, Jr.

**AFFIRMED.**

TODD ANTHONY FORET, JR.

VERSUS

SARAH GRAVOIS FORET

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CU 1263

 **HOLDRIDGE, J., dissents and assigns reasons.**

I respectfully dissent. While I agree the grandparents may be entitled to visitation rights, those rights are limited by the constitutional right of the parents to make decisions as to the care, custody, and control of their children. See Troxel v. Granville, 530 U.S. 57; 120 S.Ct. 2054, 2056, 147 L.Ed.2d 49 (2000). I would vacate the judgment of the trial court on both the visitation and contempt sanctions, and remand the matter to the trial court to render a new visitation judgment in accordance with the constitutional restraints on interfering with the decision-making rights of the parents. I would also revisit the contempt sanctions as the appellants may have valid reasons for their actions in accordance with a reasonable interpretation of the law and jurisprudence.